IN INTEREST OF P.D.M.

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-149-CV

IN THE INTEREST OF 

P.D.M. AND K.E.M. 

------------

FROM THE 158
TH
 DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I.  Introduction

The primary issue we address in this appeal is whether the parental presumption applies when a court-ordered sole managing conservator (Mother) dies and the possessory conservator (Father) and a third party (Grandmother) both seek custody of the children.  
See
 
Tex. Fam. Code Ann. 
§ 153.131 (Vernon 2002).  The trial court granted a no-evidence summary judgment awarding Father custody of the children based on the parental presumption.  We hold that Grandmother’s and Father’s suits are modification proceedings governed by family code chapter 156 and that, therefore, the parental presumption is not applicable.  Accordingly, we reverse the trial court’s judgment and remand this case for trial.

II.  Background Facts

P.D.M. and K.E.M.’s Mother and Father divorced in 1989.  The divorce decree named Mother sole managing conservator of the children and named Father possessory conservator.  Mother, fourteen-month-old P.D.M., and six-week-old K.E.M. moved to Krum, Texas, where Grandmother and other relatives lived.  Father moved out-of-state and maintained only sporadic contact with the children.  Father failed to make some of his ordered child support payments, and on February 5, 1999, the trial court entered a $14,129.99 judgment against Father and in favor of Mother for child support arrearage. 

In June 2000, Mother was diagnosed with cancer.  Grandmother moved into the home occupied by Mother and the children to assist them during Mother’s illness.  Mother died on March 31, 2001.  On April 6, 2001, Father sought and later received a writ of habeas corpus granting him immediate possession of the children.  Father, however, allowed the children to remain in Krum, living with Grandmother. 

On April 12, 2001, at the children’s request, Grandmother filed a suit affecting the parent child relationship (SAPCR), requesting that she and Father be named joint managing conservators of the children and that she have the exclusive right to determine the children’s primary residence.  P.D.M. and K.E.M., now fifteen and fourteen years old, respectively, executed and filed affidavits choosing Grandmother as their primary conservator. 

Five months later, because the children were still living with Grandmother in Krum, the trial court entered an “Order Continuing Duty of Support” requiring Father to make child support payments to Grandmother.  About one month later the administrator of Mother’s estate, pursuant to his “fiduciary obligation to gather and collect all assets belonging to the estate,” filed a motion seeking to collect the $14,129.99 child support arrearage judgment owed by Father. 

Seven days after Mother’s administrator sought to enforce the child support arrearage obligation, on December 6, 2001, Father filed a “Petition to Modify Parent-Child Relationship.”  Grandmother filed three motions, asking the judge to confer with the children, requesting preparation of a social study, and seeking appointment of an attorney ad litem.  On January 3, 2002, following a hearing, the trial court entered a temporary order designating Father temporary managing conservator and implicitly overruling all of Grandmother’s motions.  
See
 
Tex. R. App. P.
 33.1(a)(2)(A).   

The children filed a plea in intervention.  Their petition sought modification of the January 10, 1989 divorce decree.  The children requested that Grandmother be appointed their managing conservator and expressed their desire to continue living in Krum with Grandmother.

Father filed a three page rule 166a(i) no-evidence motion for summary judgment.  
Tex. R. Civ. P. 
166a(i).  Father asserted that as a matter of law the parental presumption applied to him so that Grandmother bore the burden under family code section 153.131 of proving that his appointment as managing conservator would significantly impair the children’s physical health or emotional well-being.  
Tex. Fam. Code Ann. 
§ 153.131.  Father also filed a motion to strike the children’s plea in intervention and for sanctions, contending that the children’s attorney was not the children’s authorized agent because the court’s temporary order appointing him managing conservator granted him the right to represent the children in any legal action.

Grandmother responded to Father’s no-evidence summary judgment motion, citing the supreme court’s decision in 
In re V.L.K.
 and explaining that Father’s suit was a modification proceeding, not an original custody proceeding, so that the parental presumption did not apply to Father.  24 S.W.3d 338, 342  (Tex. 2000).  Accordingly, Grandmother argued that it was not her burden to produce summary judgment evidence showing the appointment of Father as managing conservator would significantly impair the children’s health or emotional well-being.

The trial court granted Father’s no-evidence summary judgment, struck the children’s plea in intervention, and implicitly denied all relief sought by Grandmother in her SAPCR.  Grandmother perfected this appeal.

III.  Original Suit Under Chapter 153

Versus Modification Suit Under Chapter 156

In her first issue, Grandmother claims that the trial court erred by granting a no-evidence summary judgment against her because application of the parental presumption set forth in family code section 153.131(a) is limited to cases involving an original custody determination.  
Tex. Fam. Code Ann. 
§ 153.131(a).  Father agrees that the parental presumption does not apply to modification suits, but contends that his suit is not a suit to modify a prior custody order.  Father asserts instead that his suit is an original suit for two reasons:  because the first custody proceeding between a parent and a nonparent is an “original proceeding” as contemplated by family code section 153.131 and because the death of Mother caused the prior custody order to “terminate.”  The question, therefore, is whether Father’s suit is an original suit falling within family code chapter 153 or a suit to modify a prior custody order falling under chapter 156.

Family code chapter 153 is titled, “Conservatorship, Possession, and Access.”  The provisions of the chapter clearly govern initial child conservatorship, possession, and access  issues.  
See id
.
 
§
§ 153.001-.434. Family code chapter 156 is titled, “Modification.”  Section 156.001 is titled, “Orders Subject to Modification,” and provides that “[a] court with continuing, exclusive jurisdiction may modify an order that provides for the conservatorship, support, or possession of and access to a child.”  
Id
. § 156.001.  Section 156.002 is titled, “Who can File” and sets forth the provisions regarding standing to file a modification suit.  
Id.
 § 156.002.  Section 156.002(b) authorizes a person to file a modification suit following the death of a managing conservator when children and their managing conservator have resided with the person for at least six months ending not more than ninety days prior to the filing of the modification suit.  
Id.
 
§§ 156.002 (b), 102.003(a)(11). 
The provisions of chapter 156 clearly govern suits that attempt to effect a change in custody following the entry of an initial custody order.
(footnote: 1)  
Id.
 §§ 156.001-.105.

Grandmother filed her SAPCR in the 158
th
 District Court of Denton County, the court with continuing jurisdiction of the Children, in the same cause number as Father’s divorce from Mother, alleging that the children and their managing conservator had lived with her for at least six months, that the children’s managing conservator had died, and that the children still resided with her.  
See
 
id
. §§ 156.002(b), 102.003(a)(11).  Father instituted his suit by filing a “Petition to 
Modify
 Parent-Child Relationship.”  Father’s pleading avers and admits that this is a “suit to 
modify
 a prior order . . . .  The requested 
modification
 will be in the best interest of the children.  The order to be 
modified
 is entitled Decree of Divorce and was rendered on January 10, 1989.”  [Emphasis added.] Father also filed his petition to modify in the 158
th
 District Court of Denton County, the court that rendered his divorce decree, under the same cause number as his divorce, and pleaded that “[t]his Court has continuing, exclusive jurisdiction of this suit.”  Likewise, the children filed a “Petition in Intervention in Petition to 
Modify
 Parent-Child Relationship” under the divorce cause number. The children contended that “[t]he order to be 
modified
 is entitled Decree of Divorce and was rendered January 10, 1989.”  [Emphasis added.]  The children’s petition in intervention also alleged that “[t]his Court has continuing exclusive jurisdiction of the children the subject of this suit.”  Finally, the children pleaded statutory grounds for modification of their custody based on affidavits they filed indicating their preference that Grandmother be appointed managing conservator with the exclusive right to determine their primary residence.  
See id.
 § 156.101(2).  Thus, it appears that all parties sought to 
modify
 the January 10, 1989 decree of divorce and, in fact, filed their petitions in the court that rendered that decree, i.e., the court with continuing jurisdiction over the children, to accomplish the modification.  
See
 
Tex. Fam. Code Ann. 
§ 156.001.  If the parties were not seeking to modify a prior custody order, there would have been no need to file suit in the court with continuing jurisdiction over the children under the divorce cause number.
(footnote: 2)  
See
 
id
. 
§ 155.001 (requiring that subsequent suit 
be commenced as an original proceeding unless final custody order has been rendered by court of continuing, exclusive jurisdiction).

Although here a final custody order was rendered by a court of continuing exclusive jurisdiction, Father contends that a suit between two parents, like his divorce from Mother, can never be an original custody proceeding for purposes of the one-time application of family code section 153.131(a)’s parental presumption. 
See
 
id.
 
§ 153.131.  Father asserts that section 153.131(a)’s parental presumption always applies to the first custody suit between a parent and a nonparent.  In support of his position, Father relies upon some language in the supreme court’s 
In re V.L.K.
 decision.  24 S.W.3d at 340.  Specifically, Father focuses on the jury instruction given by the trial court in 
V.L.K.:

There is no presumption that a parent should be appointed managing conservator 
if there has previously been an order of custody awarding conservatorship to a third party
, or if the parent has voluntarily relinquished actual care, control, and possession of the child to a nonparent for a period of one year or more . . . .

Id. 
at 340-41
 
(emphasis added).  Father interprets the supreme court’s holding that the trial court did not abuse its discretion by giving this instruction to mean that if no order awarding conservatorship to a third party exists, then the parental presumption always applies.

An examination of the supreme court’s analysis in 
V.L.K
. evidences the supreme court’s rejection of the very position asserted by Father here:

Likewise, the Family Code does not provide that the presumption is affected by the parties involved in the suit.  Rather, the Legislature included the presumption in Chapter 153 which governs original proceedings, but did not include the presumption in Chapter 156 which governs modifications.

Chapter 153 and Chapter 156 are distinct statutory schemes that involve different issues.  Chapter 156 modification suits raise additional policy concerns such as stability for the child and the need to prevent constant litigation in child custody cases.  The Legislature has determined that the standard and burden of proof are different in original and modification suits.  A natural parent has the benefit of the parental presumption in an original proceeding, and the nonparent seeking conservatorship has a higher burden. However, the Legislature did not impose different burdens on parents and nonparents in modification suits. . . . Because the Legislature did not express its intent to apply the presumption in Chapter 156 modification suits, courts should not apply the presumption in those cases. 

Id
. at 343 (citations omitted).  Thus, contrary to Father’s position, it is not the identity of the  parties that determines whether a suit is an original suit or a suit to modify.  Rather, the Legislature decided that based on policy concerns, such as stability for the child, once custody, even between two parents, is established by court order, the parental presumption does not apply to any subsequent custody proceeding regardless of the parties involved.  
See id.;
 
see also In re M.N.G.
, No. 02-01-00149-CV, slip op. at 8, 2003 WL 21027353, at *3 (Tex. App.—Fort Worth May 8, 2003, no pet.) (rejecting argument that when modification proceedings pit parent against nonparent the parental presumption applies).

Pursuant to the custody provisions in the January 10, 1989 divorce decree, P.D.M. and K.E.M. lived with Mother in Krum from 1989 until 2002, almost thirteen years.  
Father exercised his visitation rights approximately fourteen times during the children’s lives.
  Grandmother and Father both testified at the hearing on Father’s request for temporary orders that K.E.M. vehemently opposed going to live with Father in Tennessee.  Grandmother testified:
(footnote: 3)
 Q.  Do you have an opinion as to whether or not it would be detrimental to [K.E.M.]’s emotional well-being or development to be extracted suddenly from her total environment?

A.  I think it would be highly detrimental to her because there is so much pain within her that she -- right now it would be highly detrimental to her.

Q.  When you’re talking about pain, what kind of pain?

A.  Pain from being this terrified, hurt to think that she was going to be removed from her home, and it was painful for her to think she had to leave everything that she loves; her friends, her church, her school, her home.  That’s the only one she has ever known.

Q.  How does [K.E.M.] react when she finds out that [Father] has filed something else and intends to want to take her away from here?

A.  She becomes highly agitated and she says, why can’t he leave me alone.  That’s exactly what she says.  Why can’t he just leave me alone.  He never cared anything about me, why can’t he just leave me alone.

Q.  Does she cry?

A.  Often.

Grandmother’s testimony regarding K.E.M. demonstrates the exact policy concerns recognized by the Texas Legislature and articulated by the supreme court in 
V.L.K
. supporting nonapplication of the parental presumption in modification suits.  We are not persuaded that the parental presumption applies to Father in his suit to modify the parent-child relationship.  We decline to adopt Father’s contention that the first custody suit between a parent and a nonparent is always an original suit.

Next, Father argues that his suit was really an original suit under chapter 153 of the family code because the custody award set forth in the January 10, 1989 divorce decree terminated upon Mother’s death.  In support of this position, Father relies upon 
Greene v. Schuble
, 654 S.W.2d 436, 438 (Tex. 1983) and 
Dohrn v. Delgado
, 941 S.W.2d 244, 248 (Tex. App.—Corpus Christi 1996, orig. proceeding).  Father’s argument that the prior custody order disappears, as if it had never existed, upon Mother’s death runs counter to the family code’s modification scheme and is not supported by 
Greene
.  We decline to follow 
Dohrn
.

The family code specifically authorizes modification of a prior order following the death of a managing conservator.  
Tex. Fam. Code Ann. 
§§ 156.002(b), 102.003(a)(11).  Upon the death of a managing conservator, a person like Grandmother may file a modification suit when the children and their managing conservator have resided with the person for at least six months ending not more than ninety days prior to the filing of the petition to modify. 
Id.
  Thus, the family code statutorily embraces the concept that a custody order is subject to modification even following the death of the order’s named managing conservator.

Here, Grandmother’s SAPCR, filed in the divorce cause number, in the court with continuing jurisdiction, sought modification of the prior custody order pursuant to section 156.002(b) and section 102.003(a)(11).  
Id.
  P.D.M., K.E.M., and Mother resided with Grandmother for more than six months and the children continued to reside with Grandmother when she filed her SAPCR. Because Grandmother’s SAPCR is a modification suit, Father’s motion to modify his relationship with his children cannot be an original suit.  Such a holding would nonsensically result in two differing burdens of proof on Grandmother in the same custody suit: the modification burden in Grandmother’s SAPCR of showing that the circumstances of the children have materially and substantially changed and that modification would be in the children’s best interest; and the burden in Father’s purported original suit of showing that the appointment of Father would significantly impair the children’s physical health or emotional development.  
See id
. §§ 156.101, 153.131(a).  Thus, the family code itself belies Father’s position that a custody suit following the death of a court-ordered managing conservator is always an original suit.  

Nor does 
Greene
 support Father’s position.  In 
Greene, 
the children’s father, their managing conservator, died.  654 S.W.2d at 437.  The father’s new wife, Dorothy, retained possession of the children and filed a motion to modify the custody order entered between her deceased husband and the children’s mother.  
Id.
  Dorothy sought to be named as the children’s managing conservator.  
Id.  
The children’s mother, who had been named possessory conservator in the divorce decree from the children’s father, sought a writ of habeas corpus entitling her to possession of her children.  
Id.
  
The trial court denied the mother’s petition for writ of habeas corpus, and she sought a writ of mandamus compelling the trial court to issue a writ of habeas corpus.  
Id.

The supreme court, after reciting the fact that Dorothy’s motion for appointment as managing conservator of the children was pending in the trial court, held: “[T]he death of the managing conservator ends the conservatorship order and it no longer constitutes a valid, subsisting court order 
for purposes of section 14.10
 [the prior habeas statute].”
(footnote: 4)  
Id.
 at 437-38 (emphasis added); 
see also Lewis v. McCoy
, 747 S.W.2d 48, 49-50 (Tex. App.—El Paso 1988, orig. proceeding) (recognizing 
Greene
’s holding to be that, upon death of managing conservator, custody portion of divorce decree no longer constitutes valid possession order that would preclude issuance of writ of habeas corpus for possessory conservator father).  The supreme court explained that the issuance of the writ of habeas corpus in these situations should be automatic, immediate, and ministerial.  
Greene
, 654 S.W.2d at
 437-38
.  The rationale is that because the managing conservator parent has died, someone must take immediate possession of the children, and the possessory conservator parent’s right of 
immediate
 possession is superior to others’ rights.  
See
 
Tex. Fam. Code Ann. 
§ 157.372 (recognizing that right to possession of child in habeas corpus proceeding is governed by any existing custody order); 
see id
. § 157.376 (recognizing that, if no order exists governing right to possession of the child, child shall be returned to parent if the right of possession is between a parent and a nonparent).

Thus, the supreme court held in 
Greene
 that the possessory conservator mother could obtain a writ of habeas corpus entitling her to immediate possession of her children despite the pendency of Dorothy’s motion to modify the prior custody order:

Even a court of continuing jurisdiction is bound by the mandatory language of section 14.10 [the former habeas statute].  It must grant a writ of habeas corpus for the delivery of possession of a child to the person with the superior right of possession 
without any delay for separate or simultaneous consideration of a pending motion for modification of the prior court order
, unless an exception under section 14.10 is shown to exist.   

Greene, 
654 S.W.2d at 438 (emphasis added).  By virtue of the emphasized language, the supreme court explicitly recognized that, although the managing conservator had died, the prior order was nonetheless subject to modification. 
Accord
 
Tex. Fam. Code Ann. 
§§ 156.002(b), 102.003(a)(11).  To reiterate its limited holding that the death of a managing conservator renders the custody order not valid or subsisting 
only
 for purposes of a habeas proceeding, the supreme court held: “Our opinion does not reflect consideration of the merits of the other proceedings pending in the court below. . . .  The office of habeas corpus is limited to restoring possession of the children to the person legally entitled to present possession, and may not be used to relitigate custody.”  
Greene, 
654 S.W.2d at 438
; 
see also
 
Saucier v. Pena
, 559 S.W.2d 654, 656 (Tex. 1977) (recognizing that habeas proceedings under former family code section 14.10 cannot be concerned with changing custody, so the best interest of the child is not an issue); 
McElreath v. Stewart
, 545 S.W.2d 955, 957 (Tex. 1977) (same); 
M.R.J. v. Vick
, 753 S.W.2d 526, 528 (Tex. App.—Fort Worth 1988, orig. proceeding) (same).

We cannot agree with Father’s interpretation of 
Greene
—also the position promulgated by the dissent—that a custody suit following the death of the managing conservator is always an original suit.  In fact, the supreme court in 
Greene
 specifically contemplated that a suit for modification of the parent-child relationship could follow the death of the managing conservator and the issuance of a writ of habeas corpus to the possessory conservator parent.  While 
Greene
 holds that, following the death of a managing conservator, the existing custody order is not a valid and subsisting order that operates to preclude issuance of a writ of habeas corpus to someone other than the deceased managing conservator, the order nonetheless clearly is still a “prior court order” for purposes of a motion to modify.
  
654 S.W.2d at 438
; 
see also
 
Tex. Fam. Code Ann. 
§ 156.101(1) (authorizing trial court to modify “portion of a decree” providing for custody when circumstances of conservator have materially and substantially changed, i.e., via the death of the conservator).

The dissent characterizes the 
supreme court’s circumspect word choice in 
Greene
 as dicta.  
Greene
 was an original proceeding, and the supreme court could have simply ruled that, following the death of the managing conservator, the custody order was void.  But it did not.  Instead, the supreme court narrowly held that following 
the death of a managing conservator, an existing custody order “no longer constitutes a valid subsisting court order 
for purposes of section 14.10
 [the prior habeas statute].”  
Greene, 
654 S.W.2d at 
438 (emphasis added).  In light of Dorothy’s pending motion to modify, we view this purposeful holding by the supreme court not as dicta, but as articulately stating the binding rule of law controlling in this case: following the death of a managing conservator, a custody order is no longer a valid and subsisting order that will operate to preclude issuance of a writ of habeas corpus to the possessory conservator parent, but it is nonetheless a prior custody order for purposes of a suit to modify custody.

The dissent also characterizes our opinion as “not comport[ing] with traditional notions of parental rights,” likening our opinion to the 
Greene
 dissent.  But 
the 
Greene
 dissenters would have held that the children’s mother was not entitled to a writ of habeas corpus, and it was 
this
 proposed holding that the 
dissenters acknowledged did not comport with traditional notions of parental rights.  
Id.
 at 439 (Ray, J., dissenting).  Here pursuant to traditional notions of parental rights, Father obtained a writ of habeas corpus, but then agreed to allow the children to continue living in Krum with Grandmother and does not even now seek possession of the children pursuant to the writ.  Thus, the 
Greene
 dissenters’ not-comporting-with-traditional-notions-of-parental-rights rationale is inapposite here because Father did obtain a writ of habeas corpus.

We now address 
Dohrn
, the second case relied upon by Father for the proposition that a custody suit following the death of the managing conservator is always an original suit
.  941 S.W.2d at 248.  We decline to follow 
Dohrn
. 
Dohrn
 was decided before 
V.L.K.
, and, in our view, cannot be reconciled with 
V.L.K.  
The supreme court in
 
V.L.K.
 
explained that the parental presumption does not apply in custody suits seeking to change a child’s living arrangements:

We noted that there is a difference between an original conservatorship determination and a modification: “Because a change of custody disrupts the child’s living arrangements and the channels of a child’s affection, a change should be ordered only when the trial court is convinced that the change is to be a positive improvement for the child.

24 S.W.3d at 343
.
  
The supreme court recognized that the critical distinction between an original suit and a modification suit is the fact that a modification suit seeks a change in the child’s existing living arrangements.  
Id.; see also Taylor v. Meek, 
 154 Tex. 305, 276 S.W.2d 787, 790 (Tex. 1955) (holding that 
whatever effect the parental presumption may have in an original custody action, it cannot control a suit to change custody).
  
The supreme court then held in 
V.L.K
. that “[b]ecause the Legislature did not express its intent to apply the presumption in Chapter 156 modification suits, 
courts should not apply the presumption in those cases
.”  24 S.W.3d at 343
 (emphasis added). Consequently, in light of 
V.L.K.
, we cannot agree with the holding in 
Dohrn
 that a suit filed after the death of a court-ordered managing conservator seeking a change in the children’s living arrangements is nonetheless an original suit to which the parental presumption applies.

The dissent adopts the 
Dohrn
 position.  
Dohrn
 and the dissent both suppose that if a prior custody order is no longer a valid, subsisting court order  
“for purposes of section 14.10
 [the prior habeas statute]” per 
Greene
, it also loses its status as a prior order that is subject to a chapter 156 motion to modify.  We cannot agree.  A writ of habeas corpus to obtain possession of a child focuses on whether or not “the right to possession of a child” is “governed” by court order.  
Tex. Fam. Code Ann. 
§
§ 157.372, 157.376; 
see also
 
Saucier
, 559 S.W.2d at 656; 
McElreath
, 545 S.W.2d at 957; 
M.R.J., 
753 S.W.2d at 528. Clearly, a custody order no longer governs the right to possession of a child when the managing conservator named in the order dies.  Thus, the possessory conservator parent is free to seek a writ of habeas corpus compelling his “present possession,” not necessarily “custody,” of the children.  
Greene
, 654 S.W.2d at 438.  But the fact that a prior order may no longer effectively govern the present right of possession to a child simply does not alter its status as a prior order or the reality of its prior existence, i.e., the effect it had on the subject children’s lives.  In other words, following the death of the managing conservator, a  custody order is not a valid and subsisting order that operates to preclude issuance of a writ of habeas corpus to anyone other than the order’s named, deceased managing conservator, but it nonetheless is a prior custody order for purposes of a chapter 156 suit to modify the parent-child relationship.
  
See
  
Tex. Fam. Code Ann. 
§§ 102.003(a)(11), 156.002(b), 156.101(1).
  

The dissent criticizes us for placing controlling emphasis on the children’s need for stability rather than, as the dissent would, making the rights of the surviving natural parent our “paramount concern.”  The Texas Legislature and the Texas Supreme Court, however, have made it abundantly clear that in suits seeking to 
change
 the child’s living arrangements, the child’s need for stability 
does
 take precedence over the “paramount right” of a natural parent to his child.  The supreme court has explained:

The paramount right of a natural parent to a child comes from a legal presumption that to be raised by its natural parents is to the child's best interest.  This presumption is based upon the natural affection usually flowing from parentage.
  
Although this presumption should be considered by the trial judge in weighing the evidence, it cannot be controlling in the face of a final judgment to the contrary, and, 
whatever effect such a presumption may have in an original custody action, it cannot control a suit to 
change
 custody.

Taylor, 
154 Tex. at 310, 
276 S.W.2d at 790 (citations omitted) (emphasis added); 
see also In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002) (recognizing that emotional and physical interests of a child should not be sacrificed merely to preserve parental rights).
  The Legislature, via family code section 153.131 and chapter 156, has determined that the rights of a parent are not paramount once children have been the subject of a custody order.  
Tex. Fam. Code Ann. 
§§ 153.131, 156.001-.105.  
Instead, after custody issues have been litigated once, to prevent the detriment repeated custody litigation has on children, the Legislature has decided that the controlling emphasis 
is
 on the children’s need for stability. 
 V.L.K
., 24 S.W.3d at 343; 
see also Knowles v. Grimes
, 437 S.W.2d 816, 817 (Tex. 1969) (holding that “[a]s a matter of public policy, there should be a high degree of stability in the home and surroundings of a young child”); 
see also
 
Tex. Fam. Code Ann. 
§ 153.001 (stating that public policy of this state is to provide stable environment for children).  Thus, we are required in this second custody case involving these children, i.e., Father’s suit to modify his relationship with them, to place controlling emphasis on the children’s need for stability.

The dissent proposes hypothetical scenarios concerning the implications of our decision today.  Most of these scenarios misconstrue our holding here that, pursuant to the family code 
and 
V.L.K.
, the parental presumption does not apply in a second custody suit seeking a change in the child’s living arrangement.  Some of the hypotheticals fail to recognize that standing to bring a modification suit is statutorily restricted.  
See
 
Tex. Fam. Code Ann. 
§ 156.002(b).  The balance of the dissent’s scenarios overlook the fact that a typical application of the family code’s statutory scheme favors parents over nonparents in modification suits, although not via a repeated application of the parental presumption.  In a typical custody case, both parents are appointed joint managing conservators.  
See id
. 
§ 153.131(b).  Assuming both parents are appointed joint managing conservators, the family code then operates to preserve the benefit parents attain through the application of the parental presumption by statutorily favoring the managing conservator—who is usually a parent by virtue of application of the parental presumption—in any later modification suit.  
See id. 
§ 156.101(1) (imposing burden on party seeking modification to show that circumstances of child, a conservator, or other party affected by the order have materially and substantially changed and that modification would be in the best interest of the child); 
see also M.N.G.
, No. 02-01-00149-CV, slip op. at 13, 2003 WL 21027353, at *5 (explaining: “The modification statute’s requirement of a material and substantial change of circumstances is predicated upon the doctrine of 
res judicata 
as to the best interest of the child at the time of the original decree awarding conservatorship.”
).  That is, any person seeking to alter a managing conservator’s custody must jump the statutory hurdles of showing that the circumstances of a child, a conservator, or other party affected by the order have materially and substantially changed and of showing that modification would be in the best interest of the child.  
Tex. Fam. Code Ann. 
§ 156.101.  The party seeking to alter custody must come forward with evidence concerning the best interest of the child that has developed since the initial custody order because appointment of the existing managing conservator, typically a parent, is 
res judicata 
as to the best interest of the child at the time of the original decree awarding conservatorship.  
M.N.G.
, No. 02-01-00149-CV, slip op. at 13, 2003 WL 21027353, at *5.  
Other than to clarify these points in our analysis, b
ecause the fictionalized facts recited by the dissent are not before us, we do not address them.

Finally, we feel compelled to respond to the dissent’s contention that this case “requires us to construe the modification provisions of chapter 156 of the family code” and the charge that we have misconstrued this chapter by “substituting judicial intent for legislative intent.”  First, this no-evidence summary judgment appeal is not a statutory-construction case.  Instead, the issue before us is whether Father’s “Petition to Modify Parent-Child Relationship” is in fact a petition to modify governed by family code chapter 156 or is instead an original suit falling under chapter 153.  No one, not even the parties, disputes that section 153.131's parental presumption applies to original suits and does not apply to modification suits.  In determining whether Father’s suit falls within family code chapter 153 or 156, we have reviewed these chapters’ statutory schemes and the stated intent of the Legislature in enacting them.  We have not, however, been called upon by the parties to construe any particular provision of the family code.  Nor have we construed any specific provision of the family code.  At most, we simply have construed Father’s “Petition to Modify Parent-Child Relationship.”
 

Second, we view the dissent’s statutory construction diatribe as nothing more than an implementation of the when-you-don’t-have-the-facts-and-you-don’t-have-the-law-then-pound-the-table strategy.  Because it is the dissent’s position—i.e., that a second suit, filed thirteen years after an original custody determination under same cause number as the original suit, in the court with continuing jurisdiction over the children, is somehow an 
original
 suit affecting the parent child relationship—that fails to follow the primary rule of statutory construction:  to implement the Texas Legislature’s stated intent.  
See, e.g.
, 
Tex. Fam. Code Ann. 
§ 153.001(a)(2) (stating, “The public policy of this state is to . . . provide a . . . stable . . . environment for the child); 
id.
 § 153.002 (stating that “[t]he best interest of the child shall always be the primary consideration” in any conservatorship case."); 
see also 
C.H., 
89 S.W.3d at 26; 
V.L.K.
, 24 S.W.3d at 342.  
To further its goal of providing stable home environments for Texas children, the Legislature specifically granted standing to file a modification suit following the death of a managing conservator to persons, like Grandmother, with whom children and their managing conservator have resided for at least six months prior to the filing of the modification suit. 
Tex. Fam. Code Ann. 
§§ 156.002(b), 102.003(a)(11).  
Thus, the Legislature specifically contemplated that even after the death of a managing conservator a custody order may be subject to modification.  The dissent undermines the Texas Legislature’s statutorily stated, express intent by construing Father’s “Petition to Modify Parent-Child Relationship” as an original suit affecting the parent-child relationship.  Under the dissent’s analysis, the children are uprooted, not provided with the legislatively intended stable environment.  
Cf. id
.
 
§ 153.001(a)(2)
.  Under the dissent’s analysis, the trial court is forced to rely on a stale presumption that Father’s appointment as managing conservator is in the best interests of children instead of actually reviewing the children’s current circumstances to make the legislatively intended best interest determination.  
See id.
 § 153.002
.  Under the dissent’s analysis, the trial court must blindly apply the parental presumption to a parent whose appointment as managing conservator
 the trial court has already determined to be not in the best interest of the children; 
res judicata
 as to the children’s best interest at the time the original final custody order was entered.  
See M.N.G
., No. 02-01-00149-CV, slip op. at 13, 2003 WL 21027353, at *5.
  Under the dissent’s analysis, the statutory standing provisions authorizing Grandmother to bring a modification suit following Mother’s death are judicially eliminated—the dissent would hold that no one has standing to file a modification suit under these circumstances because “there are no live custody provisions.”  
Cf. 
Tex. Fam. Code Ann. 
§§ 156.002(b), 102.003(a)(11).

Our analysis, on the other hand, gives effect to the stated intent of the Texas Legislature set forth in the Texas Family Code to promote stability for children and to make the best interests of the children the trial court’s primary consideration in any custody dispute.  
See, e.g.
,
 id
. 
§§ 153.001(a)(2)-
.002.  
Our analysis gives effect to the Texas Legislature’s adoption of a statutory scheme authorizing modification suits following the death of a court-ordered managing conservator under circumstances like the present case.  
Id.
 §§ 156.002(b), 102.003(a)(11).
  We have carefully reviewed our opinion and analysis and we are confident that we have properly interpreted the legislative intent underlying family code chapters 153 and 156
.

Father’s suit seeks to move the children from Krum, Texas, where they have now lived with Mother and Grandmother for over thirteen years, to Chattanooga, Tennessee to reside with Father—a definite change in the children’s living arrangements.  Additionally, a prior final custody order was entered concerning the children, the January 10, 1989 divorce decree.  Thus, Father’s suit is a second custody suit, seeking to alter custody provisions set forth in the divorce decree that gave Father only possessory conservatorship of the children, and is governed by family code chapter 156, not family code chapter 153.  Therefore, chapter 153's parental presumption is not applicable. 
See
 
V.L.K.
, 24 S.W.3d at 344.  Because the parental presumption does not apply to Father, the trial court erred by granting a no-evidence summary judgment for Father on the ground that Grandmother produced no summary judgment evidence that Father’s appointment as managing conservator would significantly impair the children’s physical health or emotional development.  We sustain Grandmother’s first issue.

IV.  Conclusion

Having sustained Grandmother’s first issue, we need not reach her second through fifth issues.  
See
 
Tex. R. App. P.
 47.1.  We reverse the trial court’s judgment and remand this case for trial.

SUE WALKER

JUSTICE

EN BANC

CAYCE, C.J. filed a dissenting opinion in which DAY and HOLMAN, JJ. join.

DELIVERED: August 29, 2003

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-149-CV

IN THE INTEREST OF P.D.M. AND K.E.M.

------------

FROM THE 158
TH
 DISTRICT COURT OF DENTON COUNTY

------------

DISSENTING OPINION

------------

[Courts] are under the constraints imposed by the judicial function in our democratic society . . . . [T]he function in construing a statute is to ascertain the meaning of words used by the legislature.  To go beyond it is to usurp a power which our democracy has lodged in its elected legislature. . . . A judge must not rewrite a statute, neither to enlarge nor to contract it. 

- Felix Frankfurter
(footnote: 1)
 This case requires us to construe the modification provisions of chapter 156 of the family code.  The questions of law we are called upon to decide are:  1) whether a conservatorship order is a valid custodial order that is subject to modification under chapter 156 of the family code after the death of the managing conservator, and 2) whether the legislature intended by enacting chapter 156 that, when a managing conservator parent dies, the surviving parent not have the benefit of the parental presumption in a conservatorship suit brought by a nonparent.  The majority answers these questions without resort to established rules of statutory construction.  Instead, the majority relies on facts that have no bearing on the legal questions before us, legislative intent that has no support in the language of the statutes that we are asked to interpret, and a novel legal fiction that gives effect to a prior custodial order that otherwise has no validity.

It is clear from reading the majority opinion that the members of the majority believe that it is in the best interest of P.D.M. and K.E.M. to remain with the grandmother in Krum, Texas.  As the majority points out, the children have lived near or with their grandmother in Krum “for over thirteen years”; their father has had “only sporadic contact with the children”; the father failed to make “some” of his child support payments; and the children have expressed their desire to have their grandmother appointed primary conservator.  The grandmother, however, cannot overcome the parental presumption that the best interest of the children is to have their father appointed managing conservator if the literal language of the family code is followed and applied to the record before us.  The grandmother has a chance to succeed only if the majority characterizes her original suit requesting managing conservatorship as a suit to “change custody” and ignores the fact that there are no 
live
 custody provisions in the prior order to change.  By holding that the grandmother’s original suit is governed by the modification provisions of chapter 156 on the basis of this rationale, the majority has applied the statute in a manner the legislature did not intend.

As appellate judges deciding questions of statutory construction, we should not be substituting judicial intent for legislative intent.  While the ramifications of interpreting the modification provisions of chapter 156 as the legislature intended may personally trouble us under the facts of this case, our role as judges requires that we put aside our own personal views of what we might like the statute to mean, and impartially interpret and apply the law as written by the legislature.
(footnote: 2)  

Because the majority opinion does not interpret and apply chapter 156 of the family code as written by the legislature, does not follow Texas Supreme Court precedent, and does not comport with traditional notions of parental rights, we dissent.

The Majority Mischaracterizes this “Original Suit” Requesting

Managing Conservatorship as a Modification Suit by

Misinterpreting Chapters 153 and 156 of the Family Code

The grandmother instituted this suit by filing an “Original Petition in Suit Affecting the Parent-Child Relationship” to request that she be appointed managing conservator of P.D.M. and K.E.M.  Her standing to file the suit is governed by the general standing provisions of section 102.003(a)(11) of the family code which, in pertinent part, provide as follows:

(a) An 
original suit
 may be filed at any time by:

. . . . 

(11) a person with whom the child and the child’s . . . managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition 
if the child’s . . . managing conservator, or parent is deceased at the time of the filing of the petition
[.]
(footnote: 3)

Chapter 153 of the family code governs all original suits to determine conservatorship and possession of a child.
(footnote: 4)  As the chapter’s title suggests, the provisions of chapter 153 outline the procedures and elements of proof necessary to determine a party’s rights to “Conservatorship, Possession, and Access” to a child.
(footnote: 5)  

When we construe a statute, our primary objective should be to give effect to the legislature’s intent as expressed through the words of the statute.
(footnote: 6)  The general standing provisions of sections 102.003(a)(11) and 102.004 express a clear legislative intent that suits requesting managing conservatorship filed by a nonparent against a surviving parent after the death of the managing conservator be treated as “original suits” governed by chapter 153 of the family code. None of chapter 153’s wording indicates the legislature intended that its original suit provisions be resorted to only once, as the majority mistakenly concludes, or that if applied once, the provisions have no further applicability to any subsequent conservatorship suit that may possibly be filed regarding the same child.  The only time a suit affecting conservatorship, possession, and access to a child is not governed by chapter 153 is when those rights and duties are governed by an order “subject to modification” under chapter 156.
(footnote: 7)
 Chapter 156 of the family code, which is entitled “Modification,” governs suits to modify orders establishing conservatorship, possession, and child support.
(footnote: 8)  This chapter authorizes a party “affected by an order” to file a suit to modify the order.
(footnote: 9)  The clearly expressed purpose and intent of chapter 156 is to allow modification of “an order that provides for the conservatorship, support, or possession of and access to a child,” when a party affected by the order demonstrates that modification of the order would be in the best interest of the child.
(footnote: 10)  Thus, the modification procedures of chapter 156 apply exclusively to orders that affect a party’s rights to conservatorship, support, possession of and access to a child.  Only an order that affects one or more of these rights of a party is “subject to modification” under chapter 156.
(footnote: 11)  

In this case, no child, conservator, or other party is “affected by” the prior order because the custody and support provisions of the order lost their legal effectiveness when the managing conservator died.
(footnote: 12)  Because the provisions of the now invalid order no longer affect anyone, the order is not “subject to modification” under chapter 156.
(footnote: 13)  

Contrary to the majority opinion, there is nothing in the language of chapter 153 or chapter 156 that expresses a legislative intent that an “original suit” filed after a managing conservator’s death by a nonparent with standing to bring such a suit under section 102.003(a)(11) be controlled by the modification procedures of chapter 156 merely because it is the second custody suit involving the same children, or because the suit affects the children’s “living arrangements.”  In fact, when all relevant code provisions are read together, it is clear the legislature contemplated that all such original suits be governed by chapter 153.  Nor does the wording of chapter 156 evidence a legislative intent that its modification procedures apply to an invalid order that has lost its legal effectiveness as a result of a managing conservator’s death.  By applying the modification provisions of chapter 156 to such situations, the members of the majority are enlarging the statute’s scope beyond that contemplated by the legislature when the statute was written, a function exclusively reserved for the legislature.
(footnote: 14)
 The majority reasons that because a person who has standing to file an original suit requesting managing conservatorship after the death of a managing conservator under section 102.003(a)(11) also has standing to file a suit to modify,
(footnote: 15) “a person like Grandmother may file a modification suit.”
(footnote: 16)  This analysis, however, merely begs the question of whether this is an original suit governed by chapter 153 or a suit to modify controlled by chapter 156.  Whether the grandmother may have standing to file a suit to modify is not an issue.  

Section 102.003(a)(11) clearly states that a person like the grandmother has standing to file an “original suit” requesting managing conservatorship upon the death of the managing conservator.
(footnote: 17)  The majority’s observation that such a person may also have standing to file a motion to modify when warranted provides absolutely no support to its decision to reject the plain meaning of the family code and hold that the instant suit filed with standing by the grandmother is not an “original suit” governed by chapter 153.

The Majority’s Proposition that the Parental Presumption is

Protected in a Modification Suit is Unsupported by Chapter 156

and is Contrary to the Supreme Court’s Decision in 
V.L.K.

After going to great lengths to explain why they believe the parental presumption does not and should not apply to modification suits, the majority does an about-face, arguing that the family code, indeed, “favors parents over nonparents in modification suits” and effectively ensures the parental presumption is protected in a modification suit.
(footnote: 18)  Yet, nothing in the family code provisions cited by the majority supports this novel analysis.  
To obtain modification of a prior order, a party must prove that the circumstances of the child, conservator, or other party affected by the order have materially and substantially changed and that modification of the prior order would be in the best interest of the child.
(footnote: 19)  Parentage is not mentioned as a relevant factor nor is the parental presumption.
  The majority’s suggestion that the presumption is imbedded in these “statutory hurdles” is disingenuous.  As the supreme court determined in 
V.L.K.,
 the family code’s “statutory scheme” is to 
eliminate
 the parental presumption in modification suits, 
not
 protect it.
(footnote: 20)
The Majority Opinion Conflicts with the Supreme Court’s

Decision in 
Greene v. Schuble

Not only do the members of the majority fail to follow the law as written by the legislature, they fail to honor controlling precedent of the Texas Supreme Court.  In 
Greene
, a 6-3 decision, the supreme court held that a conservatorship order is not a valid, subsisting order after the managing conservator dies.
(footnote: 21)  Rather than apply this rule of law to the facts of this case, the majority has adopted a rationale similar to that enunciated by the 
dissent
 in 
Greene
.  The dissenting justices in 
Greene
 reasoned, as the majority does here, that a conservatorship order remains subject to modification after the managing conservator dies.
(footnote: 22)  Justice C.L. Ray wrote in dissent, 

Since a [prior] court order governing possession exists, the court should only entertain the [surviving parent’s] right of possession under that order.  The proper course [for the children’s mother] would have been to file a motion to modify the decree, alleging the death of the managing conservator as a material change in conditions.
(footnote: 23)

This rationale, which led the dissent to conclude that a writ of habeas corpus should not lie to give the surviving parent right to immediate possession of the child, was flatly rejected by the majority of the supreme court in 
Greene
.
(footnote: 24)  However, even Justice Ray recognized that his dissenting view “does not comport with traditional notions of parental rights,”
(footnote: 25)—a fact the majority refuses to acknowledge about the result they have reached in this case.
(footnote: 26)
 The majority, however, contends that their opinion is consistent with the majority opinion in 
Greene. 
 
They assert that the court in 
Greene
 “specifically contemplated that a suit for modification . . . could follow the death of the managing conservator” and that, under 
Greene
, a prior custody order need not be valid and subsisting to nonetheless constitute a “prior court order” for purposes of a motion to modify.
(footnote: 27)  The majority bases this conclusion on ten words of dicta in the 
Greene
 opinion where the supreme court observed that the trial court had a mandatory duty to grant a writ of habeas corpus notwithstanding “a pending motion for modification of the prior court order.”
(footnote: 28)  The majority takes this dicta out of context and clearly infers too much from it.

The only issue in 
Greene
 was, as the majority points out, whether a writ of habeas corpus should issue to give a surviving parent immediate possession after the managing conservator dies.
(footnote: 29)  The dispositive common law rule on which the supreme court based its holding that a writ of habeas corpus should issue in such a case was that, upon the death of the managing conservator, a prior conservatorship order no longer constitutes a valid, subsisting order governing conservatorship and possession.
(footnote: 30)  The only exception the court recognized to this universal rule is when the order contains “specific provisions to the contrary.”
(footnote: 31)  

Contrary to the majority’s interpretation of 
Greene
, nothing in the opinion’s language, including the words “for purposes of section 14.10 [the prior habeas statute],” indicates that the supreme court contemplated the creation of a legal fiction that would allow a prior conservatorship order without special provisions for continuing the order after the death of the managing conservator to be treated as a valid order for the purpose of characterizing a conservatorship suit as a suit for modification.  Nor is there any suggestion in the 
Greene
 opinion that a surviving parent is required to seek modification of a prior conservatorship order that no longer affects conservatorship and possession of a child, merely to eliminate the former limitations the order may have placed on the surviving parent’s rights before the managing conservator’s death.
(footnote: 32)
 Under 
Greene
, the prior conservatorship order governing possession of P.D.M. and K.E.M. ended when the children’s mother died.  Because there is no valid, subsisting order governing the conservatorship of the children, there is no order “subject to modification” under chapter 156 of the family code.
(footnote: 33) 

The Majority’s Holding that this is a Modification Suit is 

Repugnant to Traditional Notions of Parental Rights and

Defeats the Primary Objective of the Parental Presumption

to Protect the Best Interest of the Child

The majority’s holding that a surviving parent is not entitled to the parental presumption in a conservatorship suit filed by a nonparent after the managing conservator dies is repugnant to traditional notions of parental rights.  The majority places controlling emphasis on the children’s need for stability and reasons that this interest will be protected by trying this suit under chapter 156 because the court will not be allowed to change “the children’s living arrangements” by taking the children from the grandmother and giving them to the father, without finding the change would a positive improvement for the children.
(footnote: 34)  There is, however, no 
court-ordered
 living arrangement for the trial court to change or modify.

Neither the father nor the grandmother in this case is managing conservator of the children, and the children were not living with the grandmother pursuant to a prior court order governing conservatorship and possession.  The only prior order affecting conservatorship and possession of the children is the one that appointed the mother as managing conservator of the children.  After the mother died, the only party with any lawful right to possession of the children was the father, and the source of his rights was not a court order, but, instead, derived from the natural right that exists between him and his children. 

The natural parental right is a basic civil right that is among the most precious rights we possess as human beings.
(footnote: 35)  The legislature recognized this when it gave natural parents the benefit of the parental presumption in conservatorship suits and placed a higher burden on nonparents seeking to be appointed conservators.
(footnote: 36)  This presumption does not, and should not, exist in modification suits due to the policy concern about the children’s need for stability and the need to prevent constant litigation in child custody cases.
(footnote: 37)  But, as important as these policy concerns are when an attempt is made to modify a court-ordered custody arrangement that affects a child’s life, they do not come into play when no valid court-ordered arrangement exists and the instability in the child’s life results from circumstances beyond the parties’ and the court’s control, such as when the managing conservator dies.  In such instances, the rights of the surviving parent should be a paramount concern and the presumption that the best interest of the child would be served by awarding custody to the surviving parent should apply.  None of the authority the majority relies on for the opposite proposition applies to this situation.  

The majority cites a parental termination case, 
In re C.H.
,
(footnote: 38) for the proposition that the physical and emotional interests of a child should not be sacrificed to preserve parental rights.  The primary objective of the parental presumption is to protect the best interest of the child, however, not preserve parental rights.
(footnote: 39)  Under chapter 153, a nonparent may rebut the presumption that the best interest of the child is served by awarding custody to the parent by showing that the child’s physical or emotional well-being would be significantly impaired by placing the child with the parent.
(footnote: 40)  Thus, the majority’s concern that a child’s physical and emotional interests are not served by applying the presumption in a conservatorship suit following the death of the managing conservator is wholly unfounded.

The Majority Misapplies the Doctrine of Res Judicata

The majority erroneously contends that res judicata bars appointment of the father as managing conservator on the basis of the parental presumption because the father’s appointment as managing conservator “has already determined to be not in the best interest of the children” in the prior default divorce proceeding.  There is, however, no evidence in the record of this case to support the majority’s claim that appointment of the father as managing conservator was determined not to be in the children’s best interest.  The only judicial determination made by the trial court in the prior default divorce proceeding regarding best interest was that appointment of the mother as managing conservator was in the best interest of the children.  This finding would only have res judicata effect, if at all, in a subsequent suit between the mother and the father.
(footnote: 41)  It does not apply to bar the father from relying on the parental presumption that the best interest of his children will be served by appointing him managing conservator in an original suit filed after the mother’s death by a person who was not a party to the prior proceeding.

The Majority Opinion Will Lead to Absurd Results

The majority’s holding that a conservatorship order remains “subject to modification” after the death of the managing conservator will lead to absurd and troublesome results.  The following scenarios illustrate some of those results: 

In this case, the trial court issued a writ of habeas corpus awarding the father immediate possession of P.D.M. and K.E.M.  To accomplish this, the majority agrees that the trial court was required to find that the prior conservatorship order is no longer a valid, subsisting order.
(footnote: 42)  Yet, while the majority concludes that the trial court was correct in issuing the writ of habeas corpus, they now require the same trial court to effectively reverse itself, treat the invalid order as if it were valid by determining on the basis of a legal fiction that the parties are “affected by” the order (even though they are not), and try the case as a suit to modify an invalid order that in reality affects no one. 

If, as the majority holds, a prior conservatorship order becomes invalid on the death of the managing conservator “only for purposes of a habeas proceeding,” a surviving parent who assumes possession of her children without instituting habeas proceedings may be held in contempt for violating the prior order.  Only after the prior order is changed through a subsequent modification proceeding would the surviving parent’s rights and duties be established and the parent be assured that she was not subject to being held in contempt of the prior court order.
(footnote: 43)

If, as the majority holds, a prior conservatorship order is “subject to modification” even when it is not valid and no party is “affected by” it, then an order that has been set aside or vacated by subsequent court order would qualify as an order “subject to modification” and a suit for modification may be filed by a nonparent at any time on the basis of the vacated order.

If, as the majority holds, a prior conservatorship order is always valid for modification purposes notwithstanding the occurrence of a subsequent event that renders it invalid, a formerly divorced parent who reconciles and remarries the managing conservator of a child would be deprived of the parental presumption if a nonparent sought custody of the child after the other parent died. 

Although these and other equally vexatious results are likely to arise in the wake of the majority opinion, the majority cavalierly dismisses them as “hypothetical scenarios” that are “not before us.”
(footnote: 44)
Dohrn
 is Consistent with 
V.L.K.
 and Should Be Followed

Finally, the majority concludes that the Corpus Christi Court of Appeals’ decision in 
Dohrn v. Delgado
,
(footnote: 45) which I would follow, “cannot be reconciled with” the supreme court’s decision in 
V.L.K.
  
V.L.K.
 is inapposite, however, and can be easily reconciled with 
Dohrn
 and the result that would be reached in this case if the majority followed 
Dohrn
.  

In 
V.L.K., 
the child’s aunt and uncle sought to modify a valid and subsisting conservatorship order that named the child’s grandmother as managing conservator.
(footnote: 46)  The grandmother was alive at the time the motion to modify was filed, and both she and the child’s mother, who was the possessory conservator under the order, countered the aunt and uncle’s motion with a request that the order be modified to name the mother as the sole managing conservator.  None of the parties in 
V.L.K.
 contended, as the father does in this case, that the order they sought to modify was a nullity or that their suit was not a modification proceeding governed by chapter 156 of the family code.
(footnote: 47)  The only issue in 
V.L.K. 
was whether the parental presumption applies in a bona fide 
modification
 proceeding.
(footnote: 48)  

The circumstances in 
Dohrn
 were entirely different than those in 
V.L.K.  
In 
Dohrn
, the mother was appointed joint managing conservator with the right of primary possession.
(footnote: 49)  After she died, the maternal grandfather took possession of the children and filed suit asking that he be appointed joint managing conservator with primary possession of the children.
(footnote: 50)  The trial court entered temporary orders restraining the children’s father from taking possession of the children, and the father petitioned the Corpus Christi Court of Appeals for a writ of mandamus to have the trial court’s orders set aside.
(footnote: 51)  Unlike 
V.L.K.,
 there was no valid court order governing conservatorship and possession of the children when conservatorship proceedings were filed in 
Dohrn
; the prior conservatorship order ended on the death of the mother.
(footnote: 52)  Consequently, there was no order for the trial court to modify in 
Dohrn
, as there was in 
V.L.K
.  Thus, as the Corpus Christi court recognized, the circumstances that existed at the time the parties’ rights to the children were litigated in 
Dohrn
 were virtually the same as those that exist when there has been no prior court order governing conservatorship and possession of the children and custody is being litigated for the first time.
(footnote: 53)  The supreme court’s holding in 
V.L.K.
 that the parental presumption is not available in a 
modification
 proceeding clearly has no application to a case like 
Dohrn
.

To sum up and reiterate, we would hold that the prior conservatorship order governing the possessory rights to P.D.M. and K.E.M. no longer constituted a valid, subsisting order after the death of their mother.
(footnote: 54)  Because the prior order in this case is no longer a valid, subsisting order governing conservatorship, possession of, or access to the children, we would further hold that it is not an order “subject to modification” under chapter 156 of the family code.  Instead, we would hold that this is an original suit to establish managing conservatorship governed by the provisions of chapter 153 of the family code and that the trial court correctly applied the parental presumption in this case.

The Trial Court’s No-Evidence Summary Judgment

Should Be Affirmed

Having concluded that the parental presumption was correctly applied by the trial court, the next issue to decide would be whether the trial court erred in granting the father’s no-evidence summary judgment on the basis of the presumption.  To overcome the parental presumption in the father’s favor, the grandmother had the burden to show that appointment of the father as sole managing conservator would “significantly impair the child[ren]’s physical health or emotional development.”
(footnote: 55)  In her response to the father’s no-evidence motion, however, the grandmother merely argued that she does not have the burden of showing significant impairment because the parental presumption is inapplicable in this case.  She did not “produce” or “point out” any summary judgment evidence as required by Rule 166a(i) to raise a fact issue on the question of whether appointing the father as sole managing conservator would significantly impair the children’s physical health or well-being.
(footnote: 56)  Because the parental presumption favoring the father stood unrebutted by the grandmother, we would hold that the trial court did not err in granting the father’s no-evidence motion for summary judgment on that basis.
(footnote: 57)
 For all of the reasons stated above, we dissent.

JOHN CAYCE

CHIEF JUSTICE

DAY and HOLMAN, JJ. join. 

DELIVERED: August 29, 2003

FOOTNOTES
1:
The dissent contends that under family code section 156.002(a) only a party “affected by an order” may file a suit for modification.  The dissent fails to recognize that both Father and the children 
are
 parties 
affected by the prior order.  
See
 
Tex. Fam. Code Ann. 
§ 156.101(1) (authorizing trial court to modify a portion of divorce decree providing for conservatorship when circumstances of the children, the conservator, or any party affected by the decree have materially and substantially changed).  Here, the circumstances of the children affected by the decree have materially and substantially changed by virtue of the death of their mother, their sole managing conservator, authorizing the trial court to modify the portion of Father and Mother’s divorce decree providing for conservatorship.  
See
 
id
.  Also, a person like Grandmother gains standing to file a modification suit not as a party affected by an order under section 156.002(a), but under section 156.002(b)’s discrete authorization.

2:
The dissent, contending that Grandmother’s and Father’s suits are  original custody suits, offers no explanation for why these purported original suits were filed in the divorce suit in the court with continuing jurisdiction over the children.  
See id. 
§ 156.002(a) (requiring a suit for modification to be filed in the court with continuing, exclusive jurisdiction).

3:
Although the dissent characterizes Grandmother’s testimony as hearsay, no objection of any type was asserted to this testimony.  
See
 
Tex. R. Evid.
 802. 

4:
Act of May 23, 1977, 65
th
 Leg., R.S., ch. 508, § 1, 1977 Tex. Gen. Laws 1290, 
amended by
 Act of April 20, 1989, 71
st
 Leg., R.S., ch. 50, § 1, 1989 Tex. Gen. Laws 355, 355-56,  
repealed by
 Act of April 6, 1995, 74
th
 Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282  (former
 Tex. Fam. Code Ann. 
§ 14.10(a), (e) (Vernon 1986)).

1:
Record of the Association of the Bar of the City of New York
 213 (1947), 
reprinted in
 
Courts, Judges, and Politics
 414 (Walter F. Murphy & C. Herman Pritchett, eds., 2d ed. 1974).

2:
In re Doe
, 19 S.W.3d 346, 365 (Tex. 2000) (Gonzales, J., concurring).

3:
Tex. Fam. Code Ann. 
§ 102.003(a)(11) (Vernon 2002) (emphasis supplied).  In addition to this standing provision, the grandmother may have filed an “original suit requesting managing conservatorship” if the father, as “the surviving parent,” filed the petition on the grandmother’s behalf or consented to the suit.  
Id. 
§ 102.004.

4:
Id.
 ch. 153.

5:
Id.

6:
Mitchell Energy Corp. v. Ashworth
, 943 S.W.2d 436, 438 (Tex. 1997).

7:
Tex. Fam. Code Ann. 
§ 156.001 (defining order “subject to modification” as an order that provides for the conservatorship, support, or possession of and access to a child and that affects a party).

8:
Id.
 ch. 156.

9:
Id.
 § 156.002.

10:
Id.
 §§ 156.001-.002.

11:
Id. 

12:
Greene v. Schuble
, 654 S.W.2d 436, 437-38 (Tex. 1983).  The majority’s conclusory statement that the father and children “
are
 parties affected by the prior order,” is not supported by the record, the family code, or controlling case law.  Maj. Op. at 7 n.1.  Even the grandmother recognized when she filed suit that the prior order governing conservatorship and support no longer had any effect and could not be enforced as a valid order.  In her original petition, the grandmother requested that the trial court enter temporary custody and support orders pending the outcome of the suit.  The trial court entered a temporary child support order five months later.  This new temporary support order would have been unnecessary if the terms of the prior order were still valid and enforceable, and, therefore, subject to modification.

13:
The invalid order may be vacated and set aside, but such an action would not be governed by the “modification” provisions of chapter 156.  
By requiring the trial court to 
modify
 the invalid order, the majority is requiring the trial court to perform a useless act.
  The fact that the father and children requested that the order be modified does not, as the majority suggests, determine the nature of this suit or the relief the trial court has the authority to grant.  
Surgitek, Bristol-Myers Corp. v. Abel
, 997 S.W.2d 598, 601 (Tex. 1999). 

14:
Barrett v. Indiana
, 229 U.S. 26, 30, 33 S. Ct. 692, 693 (1913).

15:
See
 
Tex. Fam. Code Ann.
 § 156.002(b) (“A person . . . who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification . . . .”).

16:
Maj. Op. at 13.

17:
Id.
 § 102.003(a)(11).

18:
Maj. Op. at 22-23.

19:
Tex. Fam. Code Ann.
 § 156.101(1).

20:
See In re V.L.K.
, 24 S.W.3d 338, 343 (Tex. 2000).

21:
654 S.W.2d at 437-38.

22:
Id. 
at 439 (Ray, J., dissenting).

23:
Id.
 

24:
Id.
 at 437-38.

25:
Id.
 at 440 (Ray, J., dissenting).  The phrase “traditional notions of parental rights” derives its meaning from the multitude of state and federal decisions in which our highest courts have observed that the natural right existing between parents and their children is of constitutional dimension.  
E.g.,
 
Stanley v. Illinois
, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212 (1972); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985); 
In re G.M.
, 596 S.W.2d 846, 846 (Tex. 1980).  This natural parental right has been characterized as “essential,” a “basic civil right[] of man,” and “far more precious . . . than property rights.”  
Stanley
, 405 U.S. at 651, 92 S. Ct. at 1212; 
see Holick
, 685 S.W.2d at 20.

26:
The majority feigns deference to traditional notions of parental rights by pointing out that they agree that the father was entitled to obtain immediate possession of the children through the issuance of a writ of habeas corpus.  Maj. Op. at 15.  Parental rights, however, involve more than mere possession of a child.  
See
 
Tex. Fam. Code Ann. 
§ 151.001 (listing rights and duties of parents); 
see also Stanley
, 405 U.S. at 651, 92 S. Ct. at 1212 (recognizing that the right to raise, care for, and nurture a child is of same constitutional dimension as the right to custody).

27:
Maj. Op. at 17-18.  While the majority concedes that the prior order in this case is no longer a valid, subsisting order governing conservatorship and possession of the children, they contend that because it was valid in the past it is always subject to modification under chapter 156.  
Id.
 at 18.

28:
Maj. Op. at 16 (quoting 
Greene
, 654 S.W.2d at 438).  

29:
Greene
, 654 S.W.2d at 437.

30:
Id. 
at 437-38.

31:
Id.
  The majority’s suggestion that we believe all conservatorship suits filed after the death of the managing conservator are governed by chapter 153 is mistaken.  Certainly, there are instances when a prior order would be subject to modification after the managing conservator’s death.  As the supreme court in 
Greene
 recognized, one such instance is when the prior order contains provisions for its continued validity such as the designation of a successor managing conservator.  In such an instance, a suit requesting managing conservatorship would clearly be governed by the modification provisions of chapter 156. 

32:
At most, the statement in 
Greene
 about “a pending motion for modification” merely demonstrates that the court recognized that modification proceedings were pending in that case, and that, without discussing the merits of the pending motion to modify, the court intended to make clear that the pending modification proceedings did not preclude the surviving parent from obtaining immediate possession of a child in the habeas corpus proceeding.

33:
See
 
Tex. Fam. Code Ann. 
§ 156.002(a) (modification provisions apply only when a party is “affected by” an order).

34:
Maj. Op. at 27-28.

35:
Stanley
, 405 U.S. at 651, 92 S. Ct. at 1212; 
Holick
, 685 S.W.2d at 20.

36:
V.L.K.
, 24 S.W.3d at 343.

37:
Id.

38:
89 S.W.3d 17 (Tex. 2002).

39:
Tex. Fam. Code Ann.
 § 153.131(a); 
see also V.L.K.
, 24 S.W.3d at 341 (“The presumption that the best interest of the child is served by awarding custody to the parent is deeply embedded in Texas law.”). 

40:
Tex. Fam. Code Ann. 
§ 153.131(a).

41:
See generally Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.
, 837 S.W.2d 627 (Tex. 1992).

42:
Maj. Op. at 16-17;
 see Greene
, 654 S.W.2d at 437-38.

43:
See
 
Tex. Fam. Code Ann. 
§ 157.376(a)(1)-(2).

44:
Maj. Op. at 23-24.

45:
941 S.W.2d 244 (Tex. App.—Corpus Christi 1996, orig. proceeding).

46:
V.L.K.
, 24 S.W.3d at 340.

47:
Id.
 at 340-41.

48:
Id.

49:
Dohrn
, 941 S.W.2d at 245.  

50:
Id.

51:
Id.
 at 246-47.

52:
See Greene
, 654 S.W.2d at 437-38.

53:
Dorhn
, 941 S.W.2d at 247-48.

54:
As a result, all rights to possession of the children vested in the father, as a matter of law, subject only to the temporary orders the trial court issued under chapter 105 of the family code.  
Greene
, 654 S.W.2d at 438; 
see
 
Tex. Fam. Code Ann.
 § 157.376(a)(1)-(2). 

55:
Tex. Fam. Code. Ann § 153.131
.

56:
Tex. R. Civ. P. 
166a(i) & cmts.; 
see Simplified Telesys, Inc. v. Live Oak Telecom, L.L.C.
, 68 S.W.3d 688, 691-92 (Tex. App.—Austin 2000, pet. denied); 
see
 
also Johnson v. Brewer & Pritchard, P.C.
, 73 S.W.3d 193, 204 (Tex. 2002); 
Walton v. City of Midland
, 24 S.W.3d 853, 858 (Tex. App.—El Paso 2000, no pet.); 
Steinkamp v. Caremark
, 3 S.W.3d 191, 194-95 (Tex. App.—El Paso 1999, pet. denied).  

Without addressing whether the hearsay testimony of the grandmother quoted in the majority opinion about K.E.M.’s desire to live with her would have been legally sufficient to create a fact issue on the question of significant impairment, it is important to note that none of this testimony was pointed out by the grandmother in response to the father’s no-evidence motion. 

57:
See Szczepanik v. First S. Trust Co.,
 883 S.W.2d 648, 649 (Tex. 1994); 
Frazier v. Yu
, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied);
 Moore v. K Mart Corp.,
 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). 

COMMENTS AND ANNOTATIONS
Comment 1:
Majority opinion by Justice Walker; Dissent by Chief Justice Cayce