NO. 07-00-0456-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 31, 2001
_____

IN THE INTEREST OF
C. R. T., S. J. T., AND D. C. T., MINOR CHILDREN
_____

FROM THE 72nd DISTRICT COURT OF CROSBY COUNTY;

NO. 6249; HON. BLAIR CHERRY, PRESIDING
_____

Before BOYD, QUINN, and REAVIS, JJ.

Appellant, Darla Timms (Darla), appeals from an Order Modifying the Parent-Child Relationship and appointing Kimberly Abell (Kim), sole managing conservator of C.R.T., S.J.T., and D.C.T., minor children (collectively referred to as the children). The order also granted possessory conservatorship of the children to their biological mother and father, Darla and Paul Timms (Paul).[1] Via one issue, Darla argues the trial court abused its discretion in denying her sole managing conservatorship of her children.

### *Background*

The children in question are the offspring of Darla and Paul Timms. Though the latter were married for approximately four years and divorced in February of 1995, only

_____

[1]Paul did not appeal the order at issue.

one of the offspring, C.R.T., was born during the union.  The others, S.J.T. and D.C.T., were conceived thereafter.[2]

At the time of the divorce, Darla and Paul were appointed joint managing conservators of C.R.T.  However, the boy, along with his oldest sister S.J.T., were left in August of 1998, by their parents to reside with their aunt, Kim.  The latter agreed to take the children because their parents were homeless drug addicts unable to feed them.  And, though Darla repeatedly told Kim and the children that she would return for them, she never did.  Instead, she conceived her youngest daughter, D.C.T., who she also left with Kim in March of 1999.  At the time Kim assumed the care of D.C.T., the child was one month old.

While Darla sporadically visited the children for brief stints of time and sometimes gave them with toys, she never provided Kim with any financial assistance.  This may be because she was only employed once during the period in which she was addicted to drugs.  Furthermore, that job, which consisted of waiting tables at a bar wherein she and Paul acquired their drugs, lasted for a short time.

Later in 1999 and at the age of 31, Darla decided to return to and live at her parent's three bedroom house.  There resided not only her mother and father but also Darla's oldest son, T.J.  In addition to returning to her parents house, Darla also began working at their service station.  They did not pay her, however.  Instead, she worked for

---

[2]Prior to marrying Paul, Darla gave birth to a young male child, T.J.  She was sixteen at the time, and whether the father was Paul or someone else is unknown.  Nevertheless, T.J. did not live with his mother and Paul while they were married.  Instead, Darla left him with her parents to raise.

the room and board.[3] Nor did this 31 year old person drive after returning to her parents house. Whether she did so because she permitted her driver's license to expire or whether the State canceled it is unclear; what is clear is that she had no driver's license and had others drive for her.

After gaining possession of C.R.T., S.J.T., and D.C.T., Kim petitioned to become permanent managing conservator of the children. The court entered temporary orders appointing her as same. So too did it order Paul to pay $200 per month in child support for the support of C.R.T. and S.J.T. Subsequently, Darla was directed to pay $170 in monthly support for D.C.T. Testimony reveals that Darla never complied with that mandate or sent Kim any funds. Whether or not Paul acted similarly is unknown.

Eventually, the petition came for hearing. Kim, Darla, and Paul appeared either individually or through counsel. After hearing the evidence and argument of all involved, the trial court appointed Kim managing conservator.

### Standard of Review

Generally, when courts resolve questions regarding conservatorship, the best interest of the child is the primary consideration. TEX. FAM. CODE ANN. § 14.07(a) (Vernon 1996); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). Moreover, the trial

---

[3]Nothing of record suggests that Darla is unable to secure a job which pays its employees with money instead of room and board. Nor does the record reflect that she ever attempted to search for such employment after returning to live with her parents. Rather, the evidence reveals that her financial status is of her own making. And, when asked at trial about how she would support the children given her utter lack of tangible income, she stated that her parents would provide for them and that she intended to live with her parents "forever." That she believes her parents would support the three children is of particular interest since nothing of record indicates that they have ever provided Kim with any financial help since C.R.T., S.J.T., and D.C.T. began living with her. Indeed, rather than attempt to gain possession of and care for her youngest granddaughter after her birth, Darla's mother opted to have the child live with Kim and the other children.

judge enjoys wide latitude in determining what those best interests are. *Gillespie v. Gillespie*, 644 S.W.2d 449 (Tex. 1992). Indeed, we cannot interfere with his ultimate decision unless we conclude that he abused his discretion in reaching it. *In Interest of Doe*, 917 S.W.2d 139, 141 (Tex. App.--Amarillo 1996, writ denied). And, discretion is abused only when the determination is arbitrary or unreasonable or fails to comport with guiding rules and principles. *Id*. (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex.1985)). In other words, it is not enough for us to simply disagree with the outcome. Rather, we must conclude that the decision lacked basis in fact or law or involved a misapplication of fact to law.

Next, in debating whether to appoint a parent or nonparent as managing conservator, statute requires the court to presume that the best interests of a child lay in appointing a biological parent. TEX. FAM. CODE ANN. § 153.131(a) (Vernon Supp. 2001). Yet, the presumption is rebuttable. For instance, proof that such an appointment would significantly impair the child's physical health or emotional development negates it, *id*.; *Brook v. Brook,* 881 S.W.2d 297, 298 (Tex.1994), as does proof that the parent voluntarily relinquished actual care, custody or control of the child for one year and the best interests of the child would be served by appointing a nonparent as conservator. TEX. FAM. CODE ANN. § 153.373(1) & (2); *In re V.L.K.*, 24 S.W.3d 338, 341-42 (Tex. 2000).

Also, there is another situation wherein the presumption does not apply. It concerns the previous appointment of a managing conservator. That is, if such a conservator was previously appointed, the decision to modify that appointment is unaffected by the presumption. *In re V.L.K.*, 24 S.W.2d at 342. And, should that circumstance arise and

4

should the prior conservatorship be joint, the party seeking a modification need only show that 1) the appointment of another would be a positive improvement for and be in the best interests of the child *and* 2) the circumstances of the child, parent or conservator materially or substantially changed which change rendered the current conservatorship unworkable or inappropriate, the present living environment of the child may endanger the child's physical health or significantly impair his emotional development, *or* the terms of the existing conservatorship order were substantially and inexcusably violated. TEX. FAM. CODE ANN. §156.203(1) & (2).

### *Application*

*C.R.T.*

As previously mentioned, Darla and Paul were appointed joint managing conservators of C.R.T. when they divorced. Given this, the presumption that a natural parent should remain conservator is inapplicable. *In re V.L.K., supra.* Furthermore, as one of the initial managing conservators, Darla was obligated under statute, common law and the divorce decree to care for, control, protect, and reasonably discipline the child. *Tex. Fam. Code Ann.* §153.074(1). So too was she duty bound to support him financially, physically, medically, and emotionally. *Id.* at §153.074(2). Despite these obligations however, Darla voluntarily relinquished possession, care and custody of C.R.T. to Kim in the summer of 1998. Since that time, she has also failed to provide Kim or C.R.T. any support. None of these acts were excused or authorized by any trial court. So too did they violate the terms and conditions of the trial court's prior orders. Given this, it can be said

that the elements of §156.203(1)(B) of the Family Code have been satisfied and that the terms of the existing conservatorship order were substantially and inexcusably violated.

Similarly, much of the same evidence serves to meet the criteria of §156.203(C). For instance, Darla has not supported her children over the years. More importantly, she deigns to work at a job which pays her no wage, and nothing appears of record suggesting in any way that she owns sufficient assets which would allow her to financially support C.R.T.[4] Nor can she legally drive a motor vehicle, apparently by her own choice. These circumstances not only were non-existent when the trial court initially appointed her a joint conservator of C.R.T. in 1995 but also are material changes which would have reasonably allowed a trial court to conclude that its prior order had become unworkable or inappropriate.[5]

To the foregoing we couple the evidence that C.R.T., and the other children, have found stability, care, protection (both emotional and physical), and support (both financial and emotional) in the home of Kim. And, given this combined evidence, we conclude that the trial court had basis to reasonably find that permitting Kim act as managing conservator constituted a positive improvement for and was in the best interest of C.R.T. Thus, the trial court's decision evinced no abused discretion.

---

[4]To the extent that Darla opined that her parents would provide the needed financial backing, the trial court could have easily rejected the proposition given the want of evidence suggesting that they had provided any support to their grandchildren.

[5]That Darla 1) retreated to the home of her parents at the age of 31, 2) utterly relies upon them for food, shelter, transportation and the like, and 3) looks to them to as the means of support for her children is also troubling. At the very least, it suggests that she herself lacks sufficient mental and emotional development to care for and guide her offspring. Needless to say, parenting is a joy and struggle. All would readily accept the joys inherent in parenting. Yet, none should be permitted to avoid the duties owed their children by voluntarily foisting the struggles upon others, as did Darla when she left not only C.R.T., S.J.T., and D.C.T. but also T.J. with others.

*S.J.T. and D.C.T.*

Unlike their brother C.R.T., S.J.T. and D.C.T. were not subject to the 1995 divorce decree since they were born thereafter. Nor can it be said that Darla voluntarily relinquished actual care, control and possession of the two girls to Kim for a period of one year given that Kim was appointed temporary managing conservator before that period expired. So, the presumption that a parent should be appointed managing conservator of the two would initially apply. Yet, evidence of record warranted the trial court's implicit finding that the presumption was rebutted. That evidence consisted of Darla's utter failure to support her children though having the duty to do so by law, *Bailey v. Bailey*, 987 S.W.2d 206, 208 (Tex. App.--Amarillo 1999, no pet.); TEX. FAM. CODE ANN. §153.074(2), and temporary court order. Furthermore, nothing of record begins to suggest that some obstacle prevented her from earning a wage sufficient to assist in the provision of her children. Rather, her failure can be characterized as a refusal to obtain paying employment and, thereby, support her children.

Furthermore, that her attitude and conduct towards her children would continue is exemplified by her own words and acts. As to the former, she testified that her parents would provide the needed finances and that she intended to live with her children in her parents' three bedroom house "forever." This hardly suggests that she will assume the obligation of supporting anyone, much less the children. As to her acts, we again refer to how she left the care of not only C.R.T., S.J.T., and D.C.T. but also her oldest boy, T.J., to others. These recent prior actions, at the very least, constitute indicia permitting one

7

to reasonably gauge her future conduct *viz-a-viz* her children. *May v. May*, 829 S.W.2d 373, 377 (Tex. App.--Corpus Christi 1992, writ denied).

Added to the evidence that Darla lacked ready means to personally support her offspring and expected others to care for them is testimony that she failed to investigate the medical condition of her children until told to do so by Kim, that this 31 year old person could not legally drive her children anywhere (such as to school or to a doctor's office) since she had no driver's license, and that she had been dependent upon intoxicating substances for more than the majority of the lives of S.J.T. and D.C.T. Failing to support one's children has been considered indicia illustrating that appointment of the parent would significantly impair the child's physical health. *Thomas v. Thomas*, 852 S.W.2d 31, 35-36 (Tex. App.--Waco 1993, no writ). So too has evidence physical abuse, severe neglect, abandonment, drug and alcohol abuse, and very immoral behavior been deemed indicative impairment upon the child's health. *Id.*; *May v. May*, 829 S.W.2d at 376-77. Darla's drug problem, her abandoning C.R.T., S.J.T., and D.C.T. to Kim, her abandoning T.J. to her parents, her failure to provide support to C.R.T., S.J.T. and D.C.T., her utter dependence upon her parents for her well-being, and her exhibition of a want of personal responsibility and emotional development are indicia of like ilk. They too evince potential impairment of health and emotional development sufficient to justify the appointment of a third-party as managing conservator instead of a parent. They also provide evidence rebutting the presumption that Darla should be the managing conservator of S.J.T. and D.C.T. And, when coupled with the evidence of stability, support, and nurturing offered by Kim, we cannot but find that the trial court's appointment of Kim constituted a positive

8

improvement, furthered the best interests of the children, and exemplified a legitimate exercise of discretion.

Accordingly, the judgment executed below is affirmed.

Brian Quinn
Justice

Publish.