NO. 07-03-0531-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 20, 2005

_____

IN THE MATTER OF THE MARRIAGE OF
KELLEY WALKER AND CATINA WALKER
AND IN THE INTEREST OF S.W. AND K.W., CHILDREN
_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B32685-0303; HONORABLE ED SELF, JUDGE
_____

Before REAVIS and CAMPBELL, JJ., and Boyd, S.J.[1]

**MEMORANDUM OPINION**

Appellant Catina Walker brings this appeal from a decree of divorce terminating her marriage to appellee Kelley Walker. She does not challenge dissolution of the marriage or division of the community estate but presents two issues assigning error to those portions of the decree naming both parties joint managing conservators of their two minor children and giving appellee the exclusive right to determine their primary residence. Incorporating the applicable standard of review, appellant's first issue asks whether the trial

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

court abused its discretion by determining that naming appellee joint managing conservator with the exclusive right to determine the residency of the children was in the children's best interest. Her second issue is a recasting of the same question. We affirm.

Evidence showed the parties were married in January 1990. The couple's first child was born in 1996 and their second child in 1998. In 2003 appellee was employed as a security guard working 12 hour shifts beginning at 5 a.m. three days a week. Appellant was employed as a nurse at a state prison. She worked from 5 a.m. to 2 p.m. five days a week. Appellant's mother, Patsy Hall, helped the couple care for the children.

In February 2003 appellant began visiting with a co-worker named Billy Havens. On March 16, 2003 appellant left appellee and both children and moved in to live with Havens. Appellee filed suit for divorce the following day. Appellant answered and filed a counterclaim for divorce seeking to be named joint managing conservator with the right to determine the children's primary residence and seeking an award of child support. Two or three months after the separation, Danna Thompson and her two sons moved in with appellee.

At the final hearing the trial court heard testimony from the parties, Danna Thompson, a friend and co-worker of appellee named Rodney Garcia, appellant's brother Chris Hall, and appellant's mother Patsy Hall. Appellee testified about his relationship with the children including his primary role in their care during the morning when appellant was at work and his involvement with their other activities. He explained that if the children lived with him, they would be able to stay in the same three-bedroom house where they

2

had been living and he would be their primary caregiver four days a week. On the days when he worked, Thompson and Patsy Hall would care for the children.

Danna Thompson testified she had two sons from a previous marriage, that she has a good relationship with the parties' children and would care for them when appellee was not available. On cross-examination she admitted that her most recent prior relationship was with a woman, with whom she had lived for two-and-a-half years, but with whom she no longer associated. Rodney Garcia generally testified he often visited appellee at home and observed a good relationship between appellee and the children. Appellant's brother Chris Hall believed appellee was a "great dad" and it would be in the children's best interest for appellee to be named "primary conservator" for them. He had not been to Billy Havens' house and could not tell the court anything about the conditions there.

Appellant testified her decision to leave appellee was based on his alcohol abuse, drug use and infidelity. She described appellee's excessive alcohol use early in their marriage including his arrest for driving while intoxicated on their wedding night.[2] She also alleged appellant used marijuana and amphetamine but believed he had stopped. She described an incident in November 2002 when she found appellee sniffing starter fluid. This event convinced her to leave appellee. Her testimony was the older child's grades went from straight As to "low Bs" while living with appellee under the court's temporary orders. She described an incident in which she had planned a birthday party for the children. She invited appellee and Thompson, but she alleged appellee undermined this

_____

[2] This was his third, and final, arrest for that offense.

3

effort by conducting another party for the children without including appellant. Appellant's plan for caring for the children if they lived with her was to take them to Patsy Hall's home before leaving for work before 5 a.m. and to be available to pick the children up when they got out of school.

Patsy Hall testified she had cared for the children when neither parent was available and would continue to do so. Her only explicit criticism of appellee concerned his alcohol use. She did not allege that conduct posed a threat to the children. She agreed appellee was a good father, and had a good relationship with the children. She also agreed in some instances he interacted with them better than appellant, even better than she would. She also agreed the care plan proposed by appellant would be very disruptive to the children.

After the trial court signed its final decree naming the parties joint managing conservators and giving appellee the right to determine the children's primary residence, appellant requested findings of fact and conclusions of law. The court produced 62 findings of fact and 7 conclusions of law.

The Family Code establishes the best interest of the child as the primary consideration when courts determine conservatorship of a child. Tex. Fam. Code Ann. § 153.002 (Vernon 2002). Section 153.134 authorizes a court to name both parents joint managing conservators if it finds such a designation is in the best interest of the child. Tex. Fam. Code Ann. § 153.134(a) (Vernon Supp. 2005). That statute lists six specific factors in determining best interest, and directs courts to consider any other relevant factor. *Id.* Several, but not all, of the listed factors correspond with those set out by our supreme court

4

in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Although *Holley* involved termination of parental rights, our courts have looked to the factors listed there in determining the issue of best interest in other suits affecting the parent-child relationship. *See, e.g., In the interest of C.R.O.* 96 S.W.3d 442, 451 (Tex.App.–Amarillo 2002, pet. denied). Section 153.134(b) requires an order naming joint managing conservators to designate one as having the exclusive right to determine the child's primary residence, to allocate other rights and responsibilities of the parents and to include provisions to minimize disruption of the child's education, daily routine and association with friends. Tex. Fam. Code Ann. §153.134(b) (Vernon Supp. 2005).

Trial courts are afforded wide discretion in making determinations of custody possession and visitation. *In the interest of C.R.T.*, 61 S.W.3d 62, 65 (Tex.App.–Amarillo 2001, pet. denied) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982)). Abuse of the court's discretion is shown only when it acts without reference to any guiding rules or acts arbitrarily or unreasonably. *Id.* Our review must also give deference to the trial court because it is in the best position to observe the demeanor of the witnesses and evaluate their credibility. *In the interest of De la Pena*, 999 S.W.2d 521, 526 (Tex.App.–El Paso 1999, no pet.). An abuse of discretion ordinarily does not occur when the trial court bases its decision on conflicting evidence. *See In re K.R.P.*, 80 S.W.3d 669, 674 (Tex.App.–Houston [1st Dist.] 2002, pet. denied).

The gist of appellant's argument is that the trial court ignored relevant evidence and did not consider all the applicable factors for determining the best interest of the children

5

set out in *Holley*. Appellant initially notes the trial court could not consider the first factor set out in *Holley*, the desires of the children, because no evidence on their desires was presented. We note, though, the trial court's findings of fact include findings stating appellee's home is the only residence the children have known since their births, and stating the children are happy in appellee's home. Appellant does not dispute the evidence supporting those findings. Moreover, both children here were under 12. *Cf*. Tex. Fam. Code Ann. § 153.134(a)(6) (court shall consider the preference of a child 12 years of age or older).

Appellant next argues the trial court did not consider the danger to the emotional or physical well-being of the children from the presence of Danna Thompson's sons or "if [the children] were to discover their father drunk or high from sniffing starter fluid." She offered no evidence at trial of how the presence of Thompson's sons, who were slightly older than the parties' children, would present any risk. The trial court's findings of fact (45, 46) accurately reflected the evidence concerning appellee's alcohol use and show the court considered that evidence. Appellant points to the absence of evidence of alcohol or drug use at the Havens house. The court heard virtually no evidence about Havens. He did not testify and, other than appellant, no witness said they had been to his house. As the trier of fact the trial court was the exclusive judge of the credibility of the witnesses and weight to be given their testimony. *De la Pena*, 999 S.W.2d at 526. The trier of fact may choose to believe all, part or none of any witness's testimony. *In the interest of R.D.S.*, 902 S.W.2d 714, 916 (Tex.App.–Amarillo 1995, no writ). The findings of fact indicate the trial court found credible appellant's testimony concerning appellee's alcohol use and

6

considered that evidence. The omission of findings concerning drug use does not, as appellant argues, indicate the trial court ignored that evidence. The court may have found it not credible.

Appellant next discusses the parental abilities of the parties as a factor in determining best interest. She attributes to Patsy Hall testimony that when the children were in the care of appellee they went to school in unclean clothes. The reference to the children going to school "dirty sometimes" was raised by appellant's counsel. Patsy Hall hesitantly agreed that may have happened but attributed it to her belief that "dads aren't quite as equipped as moms to take care of those things." In contrast, of the six witnesses the trial court heard, appellant was the only one who did not testify appellee had a good relationship with the children and was a good caregiver. Those witnesses included appellant's mother and brother. Appellant's brother expressly stated it would be in the best interest of the children for them to live with appellee. The evidence supported a finding appellee's parental abilities were equal to, if different from, those of appellant.

Appellant asserts the importance of providing stability for the children weighs in favor of placing the children with her. She is critical of the abilities of Danna Thompson to "provide guidance" to the children due to her past relationships. Finding of fact 32 and 35 recited Thompson's prior relationship indicating the court considered that evidence. The findings of fact also reflected appellant's conduct in leaving appellee and the children without prior warning. There was no evidence Thompson or appellee had acted similarly. The factors set out in section 153.134 do not address the possible influence of other adults but does impose on a court a duty to minimize disruption to, *inter alia*, the child's daily

7

routine. § 153.134(b)(3). Appellant's brief does not discuss the potential effects of her plan for caring for the children on their daily routine. That plan would require awakening them about 4 a.m. every school day to be taken to Patsy Hall's home where they would stay until leaving for school. Patsy Hall testified this would be very disruptive to the children. In contrast, placement with appellee would be a continuation of the routine established during the marriage.

The trial court's extensive findings of fact affirmatively indicate it considered each of the applicable factors discussed in *Holley* and most of the relevant factors listed in section 153.134.[3] Those findings of fact are supported by the record. Additionally, the findings support the court's conclusion of law that it is in the best interest of the children to grant appellee the right to designate the primary residence of the children. We overrule both of appellant's issues and affirm the judgment of the trial court.

James T. Campbell
Justice

---

[3] The absence of a specific finding on the remaining factors does not show the trial court did not consider those factors.

8