Petition for Writ of Mandamus Denied, and Opinion filed September 9,
2008








 

Petition
for Writ of Mandamus Denied, and Opinion filed September 9, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00631 -CV

____________

 

IN RE BRUCE VOGEL, Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N

This
mandamus proceeding arises out of a child-custody dispute between the child=s father and maternal grandmother. 
After the child=s mother passed away, his grandmother filed a petition
requesting that she be appointed sole managing conservator.  The father moved
to dismiss the suit, contending that the grandmother lacked standing.  The
trial court denied the motion to dismiss, and entered temporary orders naming
the father and grandmother as joint managing conservators.

The
father filed this mandamus proceeding to challenge the temporary orders and the
denial of his motion to dismiss.  We deny the petition for writ of mandamus.








Background

Relator
is Bruce Vogel, the biological father of fourteen-year-old M.R.V.  In a
previous custody suit, Bruce was appointed as M.R.V.=s possessory conservator, and the
child=s mother, Lamenda AMendy@ Levitt, was named managing
conservator.  Bruce, an admitted alcoholic, has had little involvement in
M.R.V.=s life in recent years.  When Mendy
died suddenly in March 2008, the child=s maternal grandmother, real party in
interest Martha Jo Nesbett, filed a petition for managing conservatorship. 
Bruce moved to dismiss Martha=s petition for lack of standing, arguing that she had not
demonstrated that the child=s present circumstances significantly impaired his physical
health or emotional development.

During
hearings conducted over two days, the respondent[1]
denied Bruce=s motion to dismiss.  The trial court then entered temporary orders
appointing Bruce and Martha as joint managing conservators.  Subsequently, the
trial court conducted an unrecorded hearing including an in-chambers interview
of M.R.V.  Following the interview, the trial court issued supplemental
temporary orders suspending Bruce=s possession and access to the child
except in the discretion of the amicus attorney.  In response, Bruce filed this
mandamus action, in which he contends that (1) Martha lacks legal standing to
request managing conservatorship, and (2) the trial court abused its discretion
in naming Martha as a joint managing conservator because she failed to overcome
the Aparental presumption.@

                                                       Standard of Review








Mandamus
relief is available if the relator establishes a clear abuse of discretion for
which there is no adequate remedy at law.  In re AutoNation, Inc., 228
S.W.3d 663, 667 (Tex. 2007) (orig. proceeding).  A trial court abuses its
discretion if it reaches a decision so arbitrary and unreasonable as to
constitute a clear and prejudicial error of law.  Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  With respect to the resolution
of factual issues, the reviewing court may not substitute its judgment for that
of the trial court.  Id.  Thus, the relator therefore must establish
that the trial court reasonably could have reached only one decision.  Id.
at 840.  On the other hand, a trial court has no discretion in determining what
the law is or applying the law to the facts; therefore, a clear failure by the
trial court to analyze or apply the law correctly constitutes an abuse of
discretion.  Id.  Because a trial court cannot abuse its discretion if
it reaches the correct result for the wrong reason, we will uphold the trial
court=s order on any ground supported by
the mandamus record.  See In re ExxonMobil Corp., 97 S.W.3d 353, 358 n.5
(Tex. App.CHouston [14th Dist.] 2003, orig. proceeding); Luxenberg v. Marshall,
835 S.W.2d 136, 141B42 (Tex. App.CDallas 1992, orig. proceeding).

                                                                   Standing

In his
first issue, Bruce argues that Martha lacks standing to request managing
conservatorship of M.R.V.  Standing, which is implicit in the concept of
subject-matter jurisdiction, is a threshold issue in a custody proceeding.  See
Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993); In
re SSJ-J, 153 S.W.3d 132, 134 (Tex. App.CSan Antonio 2004, no pet.).  We
review a party=s legal standing, which is a question of law, under the de novo standard. 
Concerned Cmty. Involved Dev., Inc. v. City of Houston, 209 S.W.3d 666,
670 (Tex. App.CHouston [14th Dist.] 2006, pet. denied), cert. denied, 128 S.Ct.
432 (2007).  We construe the petition in favor of the pleader, and determine
whether any evidence in the record supports standing.  Id. at 671. 
Standing is determined as of the time that suit was filed in the trial court.  Tex.
Ass=n of Bus., 852 S.W.2d at 446 n.9.








Martha,
as M.R.V.=s grandparent, has standing to file an original suit for managing
conservatorship[2] if she
provided satisfactory proof to the trial court that appointment Ais necessary because the child=s present circumstances would
significantly impair the child=s physical health or emotional development[.]@  Tex. Fam. Code Ann. ' 102.004(a)(1) (Vernon Supp. 2008). 
Bruce seeks to add two extra prerequisites to Martha=s standing requirement.  First, he
claims that Martha must demonstrate imminent substantial impairment. 
Second, he seeks to engraft the parental presumption onto the standing
requirement.  We decline to impose additional requirements upon the plain
statutory language, and hold that Martha has legal standing to press a claim
for managing conservatorship.

A.        Immediate Danger








Before
1995, the standing statuteCFamily Code section 11.03Crequired that a petitioner
demonstrate Aa serious and immediate question concerning the welfare of the
child[.]@ See, e.g., In re Pringle, 862
S.W.2d 722, 724B25, 726 n.5 (Tex. App.CTyler 1993, no writ) (emphasis
added).[3] In 1995,
however, the Legislature repealed title 2, including section 11.03, as a part
of its recodification of the Family Code.  See Act of April 6, 1995,
74th Leg., R.S., ch. 20, ' 2, 1995 Tex. Gen. Laws 113, 282 (amended 1999) (current
version at Tex. Fam. Code Ann. ' 102.004(a) (Vernon Supp. 2008)).  The current standing
statute omits any immediacy requirement.  See Tex. Fam. Code Ann. ' 102.004(a)(1).  We presume that any
word that was omitted from a statute was excluded for a purpose.  Laidlaw
Waste Sys. (Dallas) v. City of Wilmer, 904 S.W.2d 656, 659 (Tex. 1995). 
Therefore, we adhere to the plain statutory language, and decline to recognize
an immediacy requirement that the Legislature deigned to remove from the
standing statute.[4]  See St.
Luke=s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997).

B.        Parental Presumption

Where
the parental presumption applies, the non-parent must prove by a preponderance
of evidence that appointment of the parent as sole managing conservator would
result in serious physical or emotional harm to the child.  See, e.g., Tex.
Fam. Code Ann. ' 153.131(a) (Vernon 2002); Brook v. Brook, 881 S.W.2d
297, 298 (Tex. 1994).  However, the plain statutory language does not require a
grandparent to overcome the parental presumption merely to have standing to
bring suit,[5] and we will
enforce the statute as written.  See City of Rockwall v. Hughes, 246
S.W.3d 621, 631 (Tex. 2008) (A[C]hanging the meaning of the statute by adding words to it,
we believe, is a legislative function, not a judicial function.@); Jones v. Liberty Mut. Ins. Co.,
745 S.W.2d 901, 902 (Tex. 1988).

C.        Substantial Impairment

In
determining standing, we examine M.R.V.=s present circumstances as of March
28, 2008, the date that Martha filed her petition.  See Tex. Ass=n of Bus., 852 S.W.2d at 446 n.9.  We conclude
that the record contains evidence that M.R.V.=s present circumstances on March 28
would significantly impair the child=s physical health or emotional
development.








M.R.V.
enjoyed a Avery strong@ relationship with Mendy, and there was testimony as to
concerns about the child=s emotional health after his mother=s sudden death on March 15.  Although
the plan was for M.R.V. to stay with Martha, the child disappeared during his
mother=s funeral and a Amissing juvenile@ report was filed.  Bruce,
accompanied by Mendy=s putative boyfriend, had removed M.R.V. from the funeral
without informing Martha, and immediately took the child to a lawyer=s office.  The record contains
evidence that Bruce=s decision to remove M.R.V. from his mother=s funeral was not in the child=s best interest.  After leaving the
lawyer=s office, Bruce left M.R.V. in the
care of non-relative family friends.  Martha testified that this living
arrangement would present Agiant concerns@ for the child=s emotional development.

Bruce
admits to long-term alcoholism and, in fact, drank heavily for three days after
learning of Mendy=s death.  Bruce testified that his first day of sobriety was
March 28, the date Martha filed her petition.  Bruce admitted that he could not
provide for his son=s financial needs at that time.  There was also testimony
that it would be Aharmful@ for M.R.V. to live with his father.

Given
these facts, we conclude that the trial court reasonably could have found that
M.R.V.=s present circumstances on March 28,
including his living apart from family members, would significantly impair his
physical health or emotional development.  See In re K.R.P., 80 S.W.3d
669, 677 (Tex. App.CHouston [1st Dist.] 2002, pet. denied).  We hold that Martha
has established her standing to petition for managing conservatorship of her
grandson.

We
therefore overrule relator=s first issue.

 

 








                                 Application of Parental Presumption

In his
second issue, Bruce contends that the trial court abused its discretion in
appointing Martha as joint managing conservator because Martha did not overcome
the parental presumption.  Because we conclude that Martha=s lawsuit seeks to modify the 1995
custody order, however, we hold that the parental presumption does not apply.

A Amodification suit@ refers to an action in which a party
attempts to effectuate a change in visitation rights following the entry of an
initial custody order.  See Tex. Fam. Code Ann. ' 156.001 (Vernon 2002); In re
P.D.M., 117 S.W.3d 453, 456, 461 (Tex. App.CFort Worth 2003, pet. denied).  The
distinction between an original conservatorship suit and a modification
proceeding is Amore than procedural or semantic.@  In re C.A.M.M., 243 S.W.3d
211, 215 (Tex. App.CHouston [14th Dist.] 2007, pet. filed).  The trial court is
required to apply the parental presumption in an original proceeding, but not
in a modification action.  Id. at 215B16; In re V.L.K., 24
S.W.3d 338, 342B43 (Tex. 2000).  Therefore, Aonce custody, even between two
parents, is established by court order, the parental presumption does not apply
to any subsequent custody proceeding regardless of the parties involved.@  P.D.M., 117 S.W.3d at 457B58; V.L.K., 24 S.W.3d at 340,
343.

In 1994,
Mendy and Bruce litigated M.R.V.=s conservatorship in the 310th
District Court.  Custody was established by a May 1, 1995 Order Establishing
Paternity, under which Mendy was appointed managing conservator and Bruce was
named possessory conservator.  After Mendy=s death, Martha filed a petition for
conservatorship in the same district court, bearing the cause number from the
1994 lawsuit.[6]  Both parties
have filed documents conceding that the 310th District Court has Acontinuing, exclusive jurisdiction@ and, in fact, Bruce previously has
asked the respondent to take judicial notice of the court=s 1994 file.








The
underlying lawsuit, then, is one in which Martha seeks to effect a change in
visitation rights following the entry of an initial custody order in 1995. 
Therefore, this is a modification proceeding in which the parental presumption
does not apply.  See C.A.M.M., 243 S.W.3d at 217 (describing, as
modification proceeding, action to modify prior order Afollowing the death of a sole
managing conservator@); P.D.M., 117 S.W.3d at 457B58; V.L.K., 24 S.W.3d at 340,
343.  Therefore, Martha need demonstrate only that modification would be in
M.R.V.=s best interest and that the
circumstances have Amaterially and substantially changed@ since the 1995 custody order.[7] 
See Tex. Fam. Code Ann. ' 156.101(1) (Vernon Supp. 2008).

                                               Best Interest of the Child








In
determining M.R.V.=s best interest in this modification proceeding, the trial
court may consider the following non-exclusive list of factors: (1) his
desires, (2) his emotional and physical needs now and in the future, (3) any
emotional and physical danger to him now and in the future, (4) the parental
abilities of those seeking primary possession, (5) the programs available to
assist these individuals in promoting the child=s best interest, (6) their respective
plans for him, (7) the stability of each home, (8) any acts or omissions by the
parent indicating that the existing parent-child relationship is improper, (9)
any excuse for the parent=s acts or omissions, (10) the child=s need for stability, and (11) the
need to prevent constant re-litigation over conservatorship.[8] 
See C.A.M.M., 243 S.W.3d at 221.  Addressing those factors that are
present here, we conclude that the record permitted the trial court to find
that the temporary appointment of Martha as joint managing conservator would be
in M.R.V.=s best interest.

We begin
our analysis by noting that, following an in-camera interview of M.R.V., the
trial court suspended Bruce=s visitation and access rights.[9] 
The record also contains evidence that, when Bruce attempted to telephone his
son in recent years, M.R.V. would refuse to answer the phone or speak with his
father.  This evidence of M.R.V.=s desires supports the trial court=s decision to appoint Martha as joint
managing conservator.

The
trial court=s ruling is also supported by evidence as to M.R.V.=s emotional and physical needs, and
the possible emotional and physical danger to him.  Much of this evidence
relates to Bruce=s long-term alcoholism, and includes the following testimony:

$          Bruce has suffered from alcoholism for fifteen to twenty
years.  When M.R.V. was a baby, Bruce lived with Mendy and M.R.V., and was seen
to be intoxicated around the baby. 

$          Bruce has continued to drink until very recently.  In the
past two years, he has been seen drunk and visibly swaying while walking on the
street.  Thus, Mendy intentionally tried to keep M.R.V. away from his father,
because of Bruce=s alcoholism.

$          Bruce did not stop drinking until after Mendy=s death, following a three-day period of
binge-drinking that prompted him to join Alcoholics Anonymous.  Bruce states
that he is on the first step of the Alcoholics Anonymous twelve-step program. 
As of the custody hearing, Bruce had been sober for two months which, while
encouraging, is not a long period of sobriety.  Bruce admits that he feels the
urge to resume drinking, which is not unusual for a recovering alcoholic who
faces a daily challenge to remain sober.








$          A parent=s alcoholism
can cause emotional damage to a child.  This danger is more pronounced for
M.R.V., because both of his biological parents have suffered from alcohol
abuse, and he therefore has an increased genetic chance of becoming an
alcoholic.  Accordingly, he needs to be in a non-drinking environment, such as
Martha=s house.  Were Bruce to resume drinking, his
alcoholism would present significant problems to M.R.V.

 

A trial court does not
abuse its discretion in denying sole managing conservatorship to a parent with
alcohol problems.  See, e.g., Thomas v. Thomas, 852 S.W.2d 31, 34B36 (Tex. App.CWaco 1993, no writ).[10]


Other
factors support the trial court=s decision to appoint Martha as joint managing conservator. 
Bruce=s plans for M.R.V., if awarded sole
conservatorship, would entail that Mendy=s alleged boyfriendCa non-relativeCbe the primary caretaker for an
indeterminate period of time because of the child=s lack of familiarity with his
father.  This arrangement would not promote the child=s need for stability.  The record
demonstrates that Bruce has not been a particularly stable influence on M.R.V.
thus far.  See In re De La Pena, 999 S.W.2d 521, 529 (Tex. App.CEl Paso 1999, no pet.) (inferring
significant impairment from Aplacement with a parent who has a poor track record for
stability and continuity@).  Bruce did not exercise his visitation rights in
the last two years, and the trial court may consider a parent=s non-visitation in appointing a
non-parent as managing conservator.   In re M.W., 959 S.W.2d 661, 666
(Tex. App.CTyler 1997, writ denied) (citing May, 829 S.W.2d at 375); N.B.B.,
2007 WL 3171267, at *7.  








Moreover,
courts may consider a parent=s long-term employment and financial stability in determining
conservatorship issues.  See Thomas, 852 S.W.2d at 35; C.R.T., 61
S.W.3d at 67; In re B.P., No. 02-07-00251-CV, 2008 WL 2639264, at *5
(Tex. App.CFort Worth July 3, 2008, no pet.) (mem. op.) (involving parent=s indifference towards steady
employment).  The evidence demonstrates that Bruce has been unable to maintain
steady, gainful employment over the years.  He has no money in his checking
account, and has no car, savings account, credit cards, property, or emergency
funds with which to support M.R.V.  Bruce=s inability to provide financial
support for M.R.V. is also evidenced by his significant child-support
arrearages, leading to numerous arrest warrants.[11]

Finally,
because safety, security, and stability are considered critical to child
development, in determining the child=s best interest, the trial court may
consider the potential concerns posed by uprooting the child from a stable
environment.  See In re G.R.W., 191 S.W.3d 896, 900 (Tex. App.CTexarkana 2006, no pet.) (citing Chavez
v. Chavez, 148 S.W.3d 449, 458B59 (Tex. App.CEl Paso 2004, no pet.)); In re
Rodriguez, 940 S.W.2d 265, 270B75 (Tex. App.CSan Antonio 1997, writ denied). 
Appointment of Bruce as sole managing conservator would amount to removing
M.R.V. from his grandmother, who has been involved in his life, and instead
placing the child with a person with whom M.R.V. has enjoyed almost no
relationship in the past few years, and from whom the child has chosen to
dissociate himself.

By their
very nature, custody disputes are inherently fact-intensive.  De La Pena,
999 S.W.2d at 529.  We routinely defer to the fact finder in matters of
credibility and demeanor, and particularly so in custody proceedings.  See
id.  After reviewing the evidence in light of the child=s best interest, we hold that the
temporary appointment of Martha as joint managing conservator has evidentiary
support.

 

 








Therefore,
we overrule relator=s second issue.

                                                                Conclusion

Without
passing on the merits of Martha=s claims, we hold that she has legal standing to pursue her
lawsuit for managing conservatorship.  We further hold that sufficient evidence
demonstrates that the trial court=s temporary appointment of Martha as
a joint managing conservator is in this child=s best interest.

Accordingly,
we deny the petition for writ of mandamus.

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

Petition Denied, and Opinion filed,
September 9, 2008.

Panel consists of Justices Yates,
Anderson, and Brown.









            [1]           Respondent
is the Honorable Lisa Millard, presiding judge of the 310th Judicial District
Court of Harris County.





            [2]           A
person who has standing to file an original conservatorship suit under chapter
102 may also file a suit for modification in a trial court with continuing ,
exclusive jurisdiction.  Tex. Fam. Code Ann. ' 156.002(b) (Vernon 2002).





            [3]           See
also Act of May 23, 1987, 70th Leg., R.S., ch. 744, ' 1, 1987 Tex. Gen. Laws 2666, repealed by Act
of April 6, 1995, 74th Leg., R.S., ch. 20, ' 2,
1995 Tex. Gen. Laws 113, 282.





            [4]           Other
Texas courts have similarly concluded that a grandparent need not demonstrate
an immediate danger to the child to have standing to seek conservatorship. 
See, e.g., In re Pharis, No. 12-06-00350-CV, 2006 WL 3735107, at *1 n.3
(Tex. App.CTyler Dec. 20, 2006, orig. proceeding) (mem. op.); In
re McElhaney, No. 07-04-00577-CV, 2005 WL 66351, at *1 n.1 (Tex. App.CAmarillo Jan. 12, 2005, orig. proceeding) (mem. op.); In
re K.P.O., No. 11-98-00269-CV, 2000 WL 34234982, at *2 (Tex. App.CEastland Feb. 3, 2000, no pet.) (not designated for
publication); see also Whitworth v. Whitworth, 222 S.W.3d 616, 621B22 (Tex. App.CHouston
[1st Dist.] 2007, no pet.) (impliedly rejecting immediacy requirement urged by
dissent).





            [5]           See Tex.
Fam. Code Ann. ' 102.004(a)(1); SSJ-J, 153 S.W.3d at 137B38 (A[S]tanding to
sue does not mean a right to win, but merely a right to be heard in court.@) (citation omitted).





            [6]           Were
Martha not seeking to modify the 1995 custody order, there would have been no
need for her to file a petition, bearing the 1994 cause number, in the court
with continuing jurisdiction.  See P.D.M., 117 S.W.3d at 456B57.





            [7]           Bruce
has not challenged the first modification element, that is, proof of a material
and substantial change.  See Tex. R. App. P. 52.3(h); see also P.D.M.,
117 S.W.3d at 456 n.1 (AHere, the circumstances of the children affected by
the [divorce] decree have materially and substantially changed by virtue of the
death of their mother, their sole managing conservator, authorizing the trial
court to modify the portion of Father and Mother=s divorce decree providing for conservatorship.@).





            [8]           The
record does not contain evidence as to all of these factors, so we must limit
our discussion to those factors that are addressed by the record.  See
C.A.M.M., 243 S.W.3d at 221 n.15.





            [9]           Upon
request, a trial court shall interview a child 12 year of age or older Ato determine the child=s wishes as to conservatorship.@ 
Tex. Fam. Code Ann. ' 153.009(a) (Vernon Supp. 2008).  The trial court=s interview of M.R.V. does not appear to have been
recorded.  See id. ' 153.009(f).





            [10]          See
also In re C.R.T., 61 S.W.3d 62, 67 (Tex. App.CAmarillo 2001, pet. denied) (noting mother=s dependence upon intoxicating substances during children=s lifetimes); In re Walters, 39 S.W.3d 280, 288B89 (Tex. App.CTexarkana
2001, no pet.) (finding that appointment of alcoholic parent would not be in
child=s best interest); In re N.B.B., No.
04-06-00342-CV, 2007 WL 3171267, at *8 (Tex. App.CSan Antonio Oct. 31, 2007, no pet.) (mem. op.).





            [11]          Although
an unidentified benefactor paid Bruce=s
support arrearages on the first day of the trial court=s conservatorship hearing, in deciding the child=s best interest the trial court was nonetheless
entitled to consider relator=s previous
failure to support his son=s financial
needs.